## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| L2 MOBILE TECHNOLOGIES LLC, | Civil Action No. 6:21-cv-00358 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY RELIEF AND PATENT INFRINGEMENT

Plaintiff L2 Mobile Technologies LLC ("L2MT") complains against Defendant Google LLC ("Google") as follows:

### NATURE OF ACTION

1.      This is an action for declaratory relief and patent infringement of United States Patent Nos. 8,179,913; 8,054,777; and RE47,200 (collectively, the "Patents in Suit") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

### THE PARTIES

2.      Plaintiff L2MT is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 8105 Rasor Blvd., Suite 210, Plano, TX 75024. L2MT is in the business of licensing patented technology. L2MT is the assignee of the Patents in Suit.

3.      On information and belief, Defendant is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

Defendant's registered agent for service of process in the State of Texas is Corporation Service Company, 211 E. 7th Street, Suite 620, Austin Texas 78701-3218.

4.      Defendant, directly and/or through one or more of its subsidiaries, affiliates, and/or intermediaries, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, making, using, selling, offering to sell, and/or importing mobile communications devices, such as smartphones, that embody the patented technology, enabling third party distributors, resellers, and wireless service providers to sell and offer to sell mobile communications devices, and enabling end-users to use such devices in an infringing manner in this District.

5.      Defendant's products sold in the United States comply with the UMTS and LTE wireless communications standards. These standards are also referred to as the "3G" and "4G" wireless communications standards.

## JURISDICTION

6.      This action arises under the Patent Laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business conducted in this forum, directly and/or through one or more of its subsidiaries, affiliates, and/or intermediaries, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this

District; and (iii) either alone or in conjunction with others, having committed acts of infringement within Texas and in this District. On information and belief, Defendant, directly and/or through one or more of its subsidiaries, affiliates, and/or intermediaries, has advertised (including through websites), offered to sell, sold, distributed, induced the sale and use of, and/or imported infringing products into the United States and in Texas and in this District. Defendant has, directly or through its distribution network, purposefully and voluntarily placed such products in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas and in this District. Defendant has committed direct infringement in Texas and/or committed indirect infringement based on acts of direct infringement in Texas and in this District.

8.      Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this District. Jurisdiction over Defendant in this matter is also proper in as much as Defendant has voluntarily submitted itself to the jurisdiction of the courts by registering with the Texas Secretary of State's office to do business in the State of Texas, and by appointing a registered agent. Therefore, the exercise of jurisdiction over Defendant is appropriate under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

9.      On information and belief, Defendant does one or more of the following with smartphones and other mobile devices that embody the patented technology (a) manufacture and/or assemble (directly or through third parties) these devices that have been used, offered for sale, sold, and purchased in this District; (b) use these devices in this District; (c) import these devices into the United States for sale to consumers, including consumers in this District; and (d)

sell or offer these devices for sale (directly or through third party distributors) in the United States, including to customers in this District.

**VENUE**

10.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

11.    Defendant is subject to personal jurisdiction in this District, has at least one regular and established place of business in this District, including on information and belief at 100 Congress Ave., 901 E. Fifth St., and 500 W. Second St., each in Austin, Texas, resides in this District, is registered to do business in Texas, and has committed acts of direct and indirect infringement within this District.

12.    Without limitation, on information and belief, within this District Defendant, directly and/or through subsidiaries, affiliates, and/or intermediaries, has advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or has induced the sale and use of infringing products, as alleged further herein. For example, there are at least five AT&T stores, at least four T-Mobile stores, at least two Verizon stores, and at least one Best Buy store located in the Waco, Texas area; each of which is an authorized seller of Accused Instrumentalities, as defined below.

13.    In addition, Defendant owns, operates, and provides telecommunications infrastructure and service in this District through its own phone carrier network, Google Fi, on which Accused Instrumentalities operate. Defendant provides its customers voice and high-speed data coverage (for example, via 3G, 4G LTE, or 5G) for cities such as Waco and Austin, Texas. Google Fi is owned and operated by Defendant. To use the Google Fi phone service in this District, Google provides its customers with special SIM cards and software to connect to and automatically switch between four sources of network infrastructure and services: T-Mobile, Sprint, U.S. Cellular, and public Wi-Fi networks. Defendant has entered into agreements with T-Mobile,

4

Sprint, and U.S. Cellular to lease the carriers' infrastructure and services to provide Google Fi customers with voice and data services. Promotion of this service specifically induces use of the Accused Instrumentalities in an infringing manner as described below.

14.     The cell towers used for Defendant's services are at fixed geographical locations, and Defendant has contractual and/or property rights to use the cell towers to operate its business. Defendant also ratifies the service locations through its coverage lookup service. With this coverage lookup service, Defendant advertises its ability to provide cell coverage in this District and its selected cell towers in and near this District to provide the advertised coverage depending on the location in this District. See https://fi.google.com/about/coverage.

What determines when Google Fi moves me between cellular networks? 

You can only move between networks with a phone designed for Fi. When multiple carriers are available, Google Fi will move you to the network that our analysis shows will give you the best Fi experience at your current location, whether that is 5G (for 5G compatible phones), 4G LTE, 3G, or 2G. We're constantly learning and improving, to account for factors such as newly-built towers or newly-available radio frequencies. And if your current network is providing weak or no coverage, we'll adjust in real time to find you a stronger connection.

Source: https://fi.google.com/about/faq/#coverage-3.

15.     Residents of this District also directly contract with and are billed by Defendant for these services.

### THE PATENTS IN SUIT

16.     On May 15, 2012, U.S. Patent No. 8,179,913 ("the '913 patent"), entitled "METHOD AND APPARATUS OF HANDLING VARIABLE OF RLC RESET PROCEDURE DURING     RECEIVER-SIDE-ONLY     RE-ESTABLISHMENT     IN     WIRELESS

COMMUNICATIONS SYSTEM," a copy of which is attached hereto as Exhibit 1, was duly and legally issued. The '913 patent issued from U.S. Patent Application Serial Number 11/797,300 filed May 2, 2007 and discloses and relates to wireless communication protocols. The inventors assigned all rights, title, and interest in and to the '913 patent to ASUSTeK Computer, Inc. (hereinafter "ASUSTeK"). ASUSTeK assigned its entire right, title, and interest in and to the '913 patent to Innovative Sonic Ltd. ("ISL"). ISL assigned its entire right, title, and interest in and to the '913 patent to L2MT.

17.    L2MT is the current and sole owner of all rights, title and interest in and to the '913 patent and, at a minimum, of all substantial rights in the '913 patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '913 patent.

18.    Upon information and belief, Defendant had actual notice of the '913 patent at least as early as September 24, 2018.

19.    On November 8, 2011, U.S. Patent No. 8,054,777 ("the '777 patent"), entitled "METHOD AND APPARATUS FOR HANDLING CONTROL PDUS DURING RE-ESTABLISHING RECEIVING SIDES IN A WIRELESS COMMUNICATIONS SYSTEM," a copy of which is attached hereto as Exhibit 2, was duly and legally issued. The '777 patent issued from U.S. Patent Application Serial Number 11/524,486 filed September 21, 2006 and discloses and relates to wireless communication protocols. The inventors assigned all right, title, and interest in and to the '777 patent to ASUSTeK. ASUSTeK assigned its entire right, title, and interest in and to the '777 patent to ISL. ISL assigned its entire right, title, and interest in and to the '777 patent to L2MT.

20.     L2MT is the current and sole owner of all rights, title and interest in and to the '777 patent and, at a minimum, of all substantial rights in the '777 patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '777 patent.

21.     Upon information and belief, Defendant had actual notice of the '777 patent at least as early as September 24, 2018.

22.     On January 8, 2019, U.S. Patent No. RE47,200 ("the '200 patent"), entitled "PREVENTING SHORTENED LIFETIMES OF SECURITY KEYS IN A WIRELESS COMMUNICATIONS SECURITY SYSTEM," a copy of which is attached hereto as Exhibit 3, was duly and legally issued. The '200 patent issued from U.S. Patent Application Serial Number 14/283,801 filed May 21, 2014 and discloses and relates to wireless communication protocols. The inventors assigned all right, title, and interest in and to the '200 patent to ASUSTeK. ASUSTeK assigned its entire right, title, and interest in and to the '200 patent to ISL. ISL assigned its entire right, title, and interest in and to the '200 patent to L2MT.

23.     L2MT is the current and sole owner of all rights, title and interest in and to the '200 patent and, at a minimum, of all substantial rights in the '200 patent, including the exclusive right to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '200 patent.

24.     Defendant had actual notice of the '200 patent at least as early as March 2, 2020.

25.     The Patents in Suit are standard-essential patents. ASUSTeK is or has been a member of the European Telecommunications Standards Institute ("ETSI"). ASUSTek was a key contributor of proposals to the 3G wireless standard. ASUSTek declared before ETSI the Patents in Suit as essential to the 3G wireless communication standard.

26.     The proliferation of smartphones, such as the Google Pixel family of smartphones, and their popularity, is based on the development of the 3G wireless communication standard. Without 3G technology and L2MT's inventions incorporated therein, smartphones and other mobile devices would not be able to provide the constant on-the-go access to video, streaming media, and gaming that we are accustomed to today.

### DEFENDANT'S INFRINGING PRODUCTS AND METHODS

27.     Defendant makes, uses, sells, offers for sale and/or imports into the United States smartphones that comply with the 3G wireless communications standard. (Exhibit 4) In addition, upon information and belief, all of Defendant's smartphones that comply with the 4G wireless communications standard also comply with the 3G wireless communications standard. (Exhibit 4) Each of the Patents in Suit are essential to the 3G wireless communications standard. Defendant's smartphones that comply with the 3G wireless communications standard cannot operate without implementing the methods claimed in the Patents in Suit.

28.     By way of example, and without limitation, upon information and belief, Defendant's smartphones that comply with the 3G and/or with both the 3G and 4G wireless communications standards (the "Accused Instrumentalities") include at least the Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3a, Pixel 3a XL, Pixel 3 XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a with 5G, and Pixel 5. Despite not having a license to the Patents in Suit, Defendant's Accused Instrumentalities have used the methods claimed therein.

## FIRST CAUSE OF ACTION

### (Infringement of the '913 Patent)

29.     L2MT hereby repeats and re-alleges the allegations contained in paragraphs 1 to 28, as if fully set forth herein.

30.     The '913 Patent is presumed valid under 35 U.S.C. § 282.

31.     It is necessary to practice one or more claims of the '913 patent to comply with the requirements of the 3G mobile communications standard, including without limitation 3GPP TS 25.322 v6.12.0 and subsequent versions. The Accused Instrumentalities are covered by one or more claims of the '913 patent and therefore infringe the '913 patent. A claim chart attached as Exhibit 5 identifies specifically how each element of each asserted claim of the '913 patent must be practiced by or present in smartphone devices that comply with the 3G wireless communications standard.

32.     Defendant, directly and/or through its intermediaries, has been and is now infringing at least claims 1 and 2 of the '913 patent pursuant to 35 U.S.C. § 271(a) by using without authority the Accused Instrumentalities in a manner that infringes the methods of claims 1 and 2 of the '913 patent. Upon information and belief, such use includes use of the 3G wireless capabilities during development of and in connection with testing of the Accused Instrumentalities. Such use cannot be performed without infringing claims 1 and 2 of the '913 patent. In addition, upon information and belief, Defendant's employees use the 3G capabilities of the Accused Instrumentalities in connection with their work for Defendant. Such use by Defendant's employees also necessarily infringes the methods of claims 1 and 2 of the '913 patent.

33.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 1 of the '913 patent literally and/or pursuant to the doctrine of equivalents wherein the

Accused Instrumentalities practice the method of handling a variable of a Radio Link Control reset procedure during receiver-side-only re-establishment in a wireless communications system comprising the steps of re-establishing only a receiver side of an Radio Link Control (RLC) entity, and resetting a reset state variable, used for counting the number of times a RESET protocol data unit (PDU) is scheduled to be transmitted, during the re-establishing of only the receiver side of the RLC entity.

34.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 2 of the '913 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 1, and further, wherein the wireless communications system operates in Acknowledged Mode.

35.     Defendant, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '913 patent, including at least claims 1 and 2 of the '913 patent, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.

36.     Defendant has had actual notice of the '913 patent and the infringement alleged herein at least as early as September 24, 2018, when L2MT identified the '913 patent as one of the patents owned by L2MT that reads on the 3G wireless communications standard. Upon gaining knowledge of the '913 patent, it was, or became, apparent to Defendant that the use of the 3G wireless capabilities of the Accused Instrumentalities results in direct infringement of the '913 patent. Upon information and belief, Defendant has continued and will continue to engage in activities constituting inducement of such direct infringement, notwithstanding its knowledge, or willful blindness thereto, that the activities it induces result in infringement of the '913 patent.

37.     Defendant indirectly infringes by inducing retailers and consumer end-users to infringe the methods claimed in claims 1 and 2 of the '913 patent by using the 3G wireless capabilities of such products in their normal and customary way in the United States and in this District. For example, Defendant actively induces such third parties to infringe the '913 patent by, among other thing: (i) designing, manufacturing, offering for sale, and selling the Accused Instrumentalities to such third parties with the knowledge and intent that such devices will be used in accordance with the 3G standard, (ii) enabling retailers and consumer end-users of Accused Instrumentalities to use the products in accordance with at least the 3G standard as disclosed and claimed in the '913 patent; (iii) providing instructions to retailers and consumer end-users of Accused Instrumentalities for using the Accused Instrumentalities in their customary way; (iv) advertising and promoting the Accused Instrumentalities and their compliance with at least the 3G standard; and (v) providing to such third parties the Accused Instrumentalities, including the hardware (e.g., antenna(s), filter(s), switch(es), transceiver(s), and/or baseband processor(s) contained in Accused Instrumentalities) and software components (e.g., operating systems running on Accused Instrumentalities and other software and/or firmware used to operate components of the Accused Instrumentalities) that may be required for or associated with infringement of the '913 patent's claims, through Defendant's website and through authorized third-party resellers.

38.     Defendant encourages retailers and consumer end-users to infringe the methods claimed in the '913 patent with knowledge and the specific intent to cause the acts of direct infringement performed by these third parties. On information and belief, despite having knowledge of the '913 patent, Defendant has been and will continue to make, use, sell, offer to sell, and import into the United States the Accused Instrumentalities directly and through the actions of others controlled by Defendant. Defendant is aware that the Accused Instrumentalities

11

are manufactured to comply with the 3G wireless communications standard, and that the subsequent use of such Accused Instrumentalities in the United States would be a direct infringement of the '913 patent. Therefore, Defendant is aware that retailers and consumer end-users will infringe the '913 patent by using the Accused Instrumentalities supplied by or on behalf of Defendant in their ordinary and customary way in accordance with the 3G wireless communication standard as claimed in the '913 patent. Upon information and belief, the 3G wireless capabilities of the Accused Instrumentalities cannot be operated in their normal and customary way without complying with the 3G wireless communications standard.

39.    Defendant, directly and/or through its intermediaries, has been and is now infringing at least claims 3 and 4 of the '913 patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, the Accused Instrumentalities that infringe the communications device claimed in claims 3 and 4 of the '913 patent.

40.    Upon information and belief, the Accused Instrumentalities infringe, for example, claim 3 of the '913 patent literally and/or pursuant to the doctrine of equivalents wherein such devices comprise a control circuit for realizing functions of the communications device, a processor installed in the control circuit for executing a program code to operate control circuit, and a memory coupled to the processor for storing the program code, wherein the program code comprises re-establishing only a receiver side of an Radio Link Control (RLC) entity, and resetting a reset state variable, used for counting the number of times a RESET protocol data unit (PDU) is scheduled to be transmitted, during the re-establishing of only the receiver side of the RLC entity.

41.    Upon information and belief, the Accused Instrumentalities infringe, for example, claim 4 of the '913 patent literally and/or pursuant to the doctrine of equivalents wherein such

devices comprise the limitations of claim 1, and further, wherein the wireless communications system operates in Acknowledged Mode.

42.     Defendant's direct and indirect infringement of the '913 patent has injured L2MT, and L2MT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Defendant ceases its infringing activities, it will continue to injure L2MT by infringing the '913 patent.

43.     On information and belief, Defendant acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Defendant should have known about it. Defendant continues to infringe the '913 patent by making, using, selling, offering for sale and/or importing in the United States the Accused Instrumentalities and by inducing the direct infringing use of the Accused Instrumentalities by others, in reckless disregard of L2MT's patent rights. Defendant has continued its infringement notwithstanding actual knowledge of the '913 patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '913 patent. Defendant's infringement of the '913 patent following its knowledge of the '913 patent is willful and L2MT is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## SECOND CAUSE ACTION

### (Infringement of the '777 Patent)

44.     L2MT hereby repeats and re-alleges the allegations contained in paragraphs 1 to 28, as if fully set forth herein.

45.     The '777 patent is presumed valid under 35 U.S.C. § 282.

46.     It is necessary to practice one or more claims of the '777 patent to comply with the requirements of the 3G mobile communications standard, including without limitation 3GPP TS

13

25.322 v6.12.0 and subsequent versions. The Accused Instrumentalities are covered by one or more claims of the '777 patent and therefore infringe the '777 patent. A claim chart attached as Exhibit 6 identifies specifically how each element of each asserted claim of the '777 patent must be practiced by or present in smartphone devices that comply with the 3G wireless communications standard.

47.     Defendant, directly and/or through its intermediaries has been and is now infringing at least claims 1, 6, 8, and 9 of the '777 patent pursuant to 35 U.S.C. § 271(a) by using without authority, the Accused Instrumentalities in a manner that infringes the methods of claims 1, 6, 8, and 9 of the '777 patent. Upon information and belief, such use includes use of the 3G wireless capabilities during development of and in connection with testing of the Accused Instrumentalities. Such use cannot be performed without infringing claims 1, 6, 8, and 9 of the '777 patent. In addition, upon information and belief, Defendant's employees use the 3G capabilities of the Accused Instrumentalities in connection with their work for Defendant. Such use by Defendant's employees also necessarily infringes the methods of claims 1, 6, 8, and 9 of the '777 patent.

48.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 1 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein the Accused Instrumentalities practice the method of handling a variable of a Radio Link Control reset procedure during receiver-side-only re-establishment in a wireless communications system comprising the steps of re-establishing only a receiver side of an Radio Link Control (RLC) entity, and resetting a reset state variable, used for counting the number of times a RESET protocol data unit (PDU) is scheduled to be transmitted, during the re-establishing of only the receiver side of the RLC entity.

49.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 6 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 1, and further, wherein the second control PDU corresponding to the transmitting side is a Move Receiving Window (MRW) Status PDU.

50.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 8 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 1, and further, wherein the wireless communications system operates in Acknowledged Mode.

51.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 9 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 1, and further, wherein the communications device is a mobile phone, a wireless mobile communications device, or a networking device.

52.     Defendant, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continue to indirectly infringe the '777 patent, including at least claim 1, 6, 8 and 9 of the '777 patent, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.

53.     Defendant has had actual notice of the '777 patent and the infringement alleged herein at least as early as September 24, 2018, when L2MT identified the '777 patent as one of the patents owned by L2MT that read on the 3G wireless communications standard. Upon gaining knowledge of the '777 patent, it was, or became, apparent to Defendant that the use of the 3G wireless capabilities of the Accused Instrumentalities results in direct infringement of the '777 patent. Upon information and belief, Defendant has continued and will continue to engage in

activities constituting inducement of such direct infringement, notwithstanding its knowledge, or willful blindness thereto, that the activities it induces result in infringement of the '777 patent.

54.     Defendant indirectly infringes by inducing retailers and consumer end-users to infringe the methods claimed in claims 1, 6, 8 and 9 of the '777 patent by using the 3G wireless capabilities of such products in their normal and customary way in the United States and in this District. For example, Defendant actively induces such third parties to infringe the '777 patent by, among other things: (i) designing, manufacturing, offering for sale, and selling the Accused Instrumentalities to such third parties with the knowledge and intent that such devices will be used in accordance with the 3G standard, (ii) enabling retailers and consumer end-users of Accused Instrumentalities to use the products in accordance with at least the 3G standard as disclosed and claimed in the '777 patent; (iii) providing instructions to retailers and consumer end-users of Accused Instrumentalities for using the Accused Instrumentalities in their customary way; (iv) advertising and promoting the Accused Instrumentalities and their compliance with at least the 3G standard; and (v) providing to such third parties the Accused Instrumentalities, including hardware (e.g., antenna(s), filter(s), switch(es), transceiver(s), and/or baseband processor(s) contained in Accused Instrumentalities) and software components (e.g., operating systems running on Accused Instrumentalities and other software and/or firmware used to operate components of the Accused Instrumentalities) that may be required for or associated with infringement of the '777 patent's claims through Defendant's website and through authorized third-party resellers.

55.     Defendant encourages retailers and consumer end-users to infringe the methods claimed in the '777 patent with knowledge and the specific intent to cause the acts of direct infringement performed by these third parties. On information and belief, despite having knowledge of the '777 patent, Defendant has been and will continue to make, use, sell, offer to

sell, and import into the United States the Accused Instrumentalities directly and through the actions of others controlled by Defendant. Defendant is aware that the Accused Instrumentalities are manufactured to comply with the 3G wireless communications standard, and that the subsequent use of such Accused Instrumentalities in the United States would be a direct infringement of the '777 patent. Therefore, Defendant is aware that retailers and consumer end-users will infringe the '777 patent by using the Accused Instrumentalities supplied by or on behalf of Defendant in their ordinary and customary way in accordance with the 3G wireless communication standard as claimed in the '777 patent. Upon information and belief, the 3G wireless capabilities of the Accused Instrumentalities cannot be operated in their normal and customary way without complying with the 3G wireless communications standard.

56. Defendant, directly and/or through its intermediaries, has been and is now infringing at least claims 2, 13, 15, and 16 of the '777 patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, without authority, the Accused Instrumentalities that infringe the communications device claimed in claims 2, 13, 15, and 16 of the '777 patent.

57. Upon information and belief, the Accused Instrumentalities infringe, for example, claim 2 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices comprise a communications device utilized in a wireless communications system, and Radio Link Control (RLC) entity of the communications device having a transmitting side and a receiving side, utilized for accurately reestablishing the receiving side, the wireless communications device comprising a control circuit for realizing functions of the wireless communications device, a central processing unit for executing a program code to operate the control circuit, and a memory for storing the program code, wherein the program code comprises

only reestablishing the receiving side in the RLC entity of the communications device, discarding a first control Protocol Data Unit (PDU) corresponding to the receiving side, retaining and not discarding a second control PDU corresponding to the transmitting side wherein the first control PDU corresponding to the receiving side is a Move Receiving Window (MRW) Acknowledgment (ACK) Status PDU.

58. Upon information and belief, the Accused Instrumentalities infringe, for example, claim 13 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices comprise the limitations of claim 2, and further, wherein the second control PDU corresponding to the transmitting side is a Move Receiving Window (MRW) Status PDU.

59. Upon information and belief, the Accused Instrumentalities infringe, for example, claim 15 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices comprise the limitations of claim 2, and further, wherein the wireless communications system operates in Acknowledged Mode.

60. Upon information and belief, the Accused Instrumentalities infringe, for example, claim 16 of the '777 patent literally and/or pursuant to the doctrine of equivalents wherein such devices comprise the limitations of claim 2, and further, wherein the communications device is a mobile phone, a wireless mobile communications device, or a networking device.

61. Defendant's direct and indirect infringement of the '777 patent has injured L2MT, and L2MT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Defendant ceases its infringing activities, it will continue to injure L2MT by infringing the '777 patent.

62. On information and belief, Defendant acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this

was either known or so obvious that Defendant should have known about it. Defendant continues to infringe the '777 patent by making, using, selling, offering for sale and/or importing in the United States the Accused Instrumentalities and by inducing the direct infringing use of the Accused Instrumentalities by others, in reckless disregard of L2MT's patent rights. Defendant has continued its infringement notwithstanding actual knowledge of the '777 patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '777 patent. Defendant's infringement of the '777 patent following its knowledge of the '777 patent is willful and L2MT is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## THIRD CAUSE ACTION

### (Infringement of the '200 Patent)

63.     L2MT hereby repeats and re-alleges the allegations contained in paragraphs 1 to 28, as if fully set forth herein.

64.     The '200 patent is presumed valid under 35 U.S.C. § 282.

65.     It is necessary to practice one or more claims of the '200 patent to comply with the requirements of the 3G mobile communications standard, including without limitation 3GPP TS 25.331 v6.26.0 and subsequent versions. The Accused Instrumentalities are covered by one or more claims of the '200 patent and therefore infringe the '200 patent. A claim chart attached as Exhibit 7 identifies specifically how each element of each asserted claim of the '200 patent must be practiced by or present in smartphone devices that comply with the 3G wireless communications standard.

66.     Defendant, directly and/or through its intermediaries has been and is now infringing at least claims 10–14 of the '200 patent pursuant to 35 U.S.C. § 271(a) by using without authority, the Accused Instrumentalities in a manner that infringes the methods of claims 10–14 of the '200

patent. Upon information and belief, such use includes use of the 3G wireless capabilities during development and in connection with testing of the Accused Instrumentalities. Such use cannot be performed without infringing claims 10–14 of the '913 patent. In addition, upon information and belief, Defendant's employees use the 3G capabilities of the Accused Instrumentalities in connection with their work for Defendant. Such use by Defendant's employees also necessarily infringes the methods of claims 10–14 of the '200 patent.

67.     Upon information and belief, the Accused Instrumentalities infringe, for example, claim 10 of the '200 patent literally and/or pursuant to the doctrine of equivalents wherein such products practice the method for calculating an initial security count value for a new channel, the method comprising: establishing a plurality of established channels in a wireless communication device, wherein each established channel in the wireless communication device has a corresponding security count value and utilizes a first security key; performing a security mode reconfiguration to change utilization of each of the established channels in the wireless communication device from the first security key to a second security key according to an activation time for each of the established channels, wherein upon utilization of the second security key by one of the established channels, the corresponding security count value for the one of the established channels is changed, wherein the second security key is a new security key that replaces the first security key and is different from the first security key; initiating establishment of a new channel in the wireless communication device; assigning the second security key to the new channel; utilizing a first set to obtain a first value, wherein the first set is consisting of corresponding security count values of the established channels in the wireless communication device that utilize the second key, and wherein the first value is at least as great as the x most significant bits (MSBx) of a value in the first set and at least one of the established channels

utilizing the first security key; and setting the MSBx of the initial security count value for the new channel equal to the first value, wherein if the first set is empty, then the first value is set to a first predetermined value.

68.      Upon information and belief, the Accused Instrumentalities infringe, for example, claim 11 of the '200 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 10, and further, wherein the first predetermined value is zero.

69.      Upon information and belief, the Accused Instrumentalities infringe, for example, claim 12 of the '200 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 10, and further, wherein the first value is a least as great as the MSBx of the greatest value in the first set.

70.      Upon information and belief, the Accused Instrumentalities infringe, for example, claim 13 of the '200 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 10, and further, wherein the first value is greater than the MSBx of the greatest value in the first set.

71.      Upon information and belief, the Accused Instrumentalities infringe, for example, claim 14 of the '200 patent literally and/or pursuant to the doctrine of equivalents wherein such devices practice the limitations of claim 10, and further, wherein the first set includes the corresponding security count values of each established channel in the wireless communication device utilizing the second security key when initiating the establishment of the new channel in the wireless communication device.

72.      Defendant, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continue to indirectly infringe the '200 patent, including at

least claims 10–14 of the '200 patent, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.

73.     Defendant has had actual notice of the '200 patent and the infringement alleged herein at least as early as March 2, 2020, when L2MT identified the '200 patent as one of the patents owned by L2MT that read on the 3G wireless communications standard. Upon gaining knowledge of the '200 patent, it was, or became, apparent to Defendant that the use of the 3G wireless capabilities of the Accused Instrumentalities results in direct infringement of the '200 patent. Upon information and belief, Defendant has continued and will continue to engage in activities constituting inducement of such direct infringement, notwithstanding its knowledge, or willful blindness thereto, that the activities it induces result in infringement of the '200 patent.

74.     Defendant indirectly infringes by inducing retailers and consumer end-users to infringe the methods claimed in claims 10–14 of the '200 patent by using the 3G wireless capabilities of such products in their normal and customary way in the United States and in this District. For example, Defendant actively induces such third parties to infringe the '200 patent by, among other things: (i) designing, manufacturing, offering for sale, and selling the Accused Instrumentalities to such third parties with the knowledge and intent that such devices will be used in accordance with the 3G standard, (ii) enabling retailers and consumer end-users of Accused Instrumentalities to use the products in accordance with at least the 3G standard as disclosed and claimed in the '200 patent; (iii) providing instructions to end-users of Accused Instrumentalities for using the Accused Instrumentalities in their customary way; (iv) advertising and promoting the Accused Instrumentalities and their compliance with at least the 3G standard; and (v) providing to such third parties the Accused Instrumentalities, including the hardware (e.g., antenna(s), filter(s), switch(es), transceiver(s), and/or baseband processor(s) contained in Accused Instrumentalities)

and software components (e.g., operating systems running on Accused Instrumentalities and other software and/or firmware used to operate components of the Accused Instrumentalities) that may be required for or associated with infringement of the '200 patent's claims through Defendant's website and through authorized third-party resellers.

75.     Defendant encourages retailers and consumer end-users to infringe the methods claimed in the '200 patent with knowledge and the specific intent to cause the acts of direct infringement performed by these third parties. On information and belief, despite having knowledge of the '200 patent, Defendant has been and will continue to make, use, sell, offer to sell, and import into the United States the Accused Instrumentalities directly and through the actions of others controlled by Defendant. Defendant is aware that the Accused Instrumentalities are manufactured to comply with the 3G wireless communications standard, and that the subsequent use of such Accused Instrumentalities in the United States would be a direct infringement of the '200 patent. Therefore, Defendant is aware that retailers and consumer end-users will infringe the '200 patent by using the Accused Instrumentalities supplied by or on behalf of Defendant in their ordinary and customary way in accordance with the 3G wireless communication standard as claimed in the '200 patent. Upon information and belief, the 3G wireless capabilities of the Accused Instrumentalities cannot be operated in their normal and customary way without complying with the 3G wireless communications standard.

76.     Defendant's direct and indirect infringement of the '200 patent has injured L2MT, and L2MT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Defendant ceases its infringing activities, it will continue to injure L2MT by infringing the '200 patent.

77.     On information and belief, Defendant acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Defendant should have known about it. Defendant continues to infringe the '200 patent by making, using, selling, offering for sale and/or importing in the United States the Accused Instrumentalities and by inducing the direct infringing use of the Accused Instrumentalities by others in reckless disregard of L2MT's patent rights. Defendant has continued its infringement notwithstanding actual knowledge of the '200 patent and without a good faith basis to believe that its activities do not infringe any valid claim of the '200 patent. Defendant's infringement of the '200 patent following its knowledge of the '200 patent is willful and L2MT is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for:

1.     Judgment that the Patents in Suit are each valid and enforceable;

2.     Judgment that the Patents in Suit have been and are infringed by Defendant;

3.     Judgment that Defendant's acts of patent infringement relating to the patents are willful;

4.     An award of damages arising out of Defendant's acts of patent infringement, together with pre-judgment and post-judgment interest;

5.     A permanent injunction enjoining Defendant from infringing or inducing the infringement of the Patents in Suit without additional compensation to Plaintiff in an amount to be determined by the Court;

6.     Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

24

7.      An award of L2MT's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

8.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

L2MT demands trial by jury of all issues triable of right by a jury.


## RESERVATION OF RIGHTS

L2MT's investigation is ongoing, and certain material information remains in the sole possession of Defendant or third parties, which will be obtained via discovery herein. L2MT expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.


Respectfully submitted,

Date:   April 9, 2021

*/s/ Timothy P. Maloney*
Timothy P. Maloney (IL 6216483)
Joseph F. Marinelli (IL 6270210)
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007
tim@fitcheven.com
jmarinelli@fitcheven.com

*Counsel for Plaintiff*