**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| L2 MOBILE TECHNOLOGIES LLC,<br><br>    Plaintiff<br><br>        v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 6:21-cv-00358-ADA<br><br>The Honorable Alan D. Albright<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF L2 MOBILE TECHNOLOGIES LLC'S ANSWER TO DEFENDANT
GOOGLE LLC'S COUNTERCLAIMS SUBJECT TO
PLAINTIFF'S 12(b)(6) MOTION TO DISMISS**

Plaintiff L2 Mobile Technologies LLC ("L2MT" or "Plaintiff") hereby submits the following Answer to the Counterclaims asserted by Defendant Google LLC ("Google" or "Defendant") in its Answer to L2MT's Complaint (ECF No. 16) subject to L2MT's Motion to Dismiss Google's First, Third, and Fifth Counterclaims Pursuant to FRCP 12(b)(6).

## COUNTERCLAIMS

## THE PARTIES

1.      Counterclaim Plaintiff Google is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

Answer:  L2MT admits that Google is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.      On information and belief, Counterclaim Defendant L2MT is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 8105 Rasor Blvd., Suite 210, Plano, TX 75024.

Answer:  Admitted.

## JURISDICTION AND VENUE

3.     Google's Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* This Court has subject matter jurisdiction over Google's Counterclaims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. An actual controversy exists under the Declaratory Judgment Act, because L2MT has asserted and is asserting infringement of U.S. Patent Nos. 8,179,9713 (the "'913 patent"); 8,054,777 (the "'777 patent"); and RE47,200 (the "'200 patent") by Google and Google denies those allegations.

Answer:  Admitted that Google's Counterclaims arise under the patent laws of the United States and the Federal Declaratory Judgment Act. Admitted that this Court has subject matter jurisdiction over Google's Counterclaims. Admitted that an actual controversy exists under the Declaratory Judgment Act with respect to the '777 and '200 patents because L2MT has asserted and is asserting infringement of the '777 and '200 patents and Google denies those allegations.

L2MT denies that an actual controversy exists with respect to U.S. Patent No. "8,179,9713" insofar as that number does not correspond to a patent asserted in this case. Assuming Google intended to reference U.S. Patent No. 8,179,913 (the "'913 patent"), L2MT admits that an actual controversy exists under the Declaratory Judgment Act with respect to the '913 patent because L2MT has asserted and is asserting infringement of the '913 patent and Google denies those allegations

4.     The Court has personal jurisdiction over L2MT at least by virtue of L2MT's consent to the personal jurisdiction of this Court by filing of the Complaint for Declaratory Relief and Patent Infringement (the "Complaint") against Google in this Court.

Answer:  Admitted.

5.     Venue for this case is not appropriate in this District for L2MT's claims as alleged, but, to the extent venue is found to be appropriate for L2MT's claims then venue for purposes of Google's Counterclaims set forth herein is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because: (1) this action was filed in this District by L2MT and L2MT has thus submitted to personal jurisdiction in this Court and has consented to this venue; and (2) the present Counterclaims are in response to the allegations raised in L2MT's Complaint.

Answer:  Denied that venue for this case is not appropriate in this District, otherwise admitted.

## FACTUAL BACKGROUND

### L2MT's FRAND Obligations Arise From ASUSTeK's and Innovative Sonic's Participation in Standards Setting Organizations

6.     Technical standards play a critical role in the development of wireless communication technology. In general, technical standards—such as those for wireless communication technology—have the potential to encourage innovation and promote competition among equipment suppliers and network providers in the wireless communication industry.

Answer:  L2MT lacks sufficient information and belief to either admit or deny the allegations of paragraph 6.

7.     The technical specifications for most standards are published and broadly available. Product designers and manufacturers are thus willing to invest heavily in the development of handsets or component parts because, so long as their products are compliant with the published technical standard, those products will operate effectively within the carrier networks and be compatible with other products from third parties.

Answer:  L2MT lacks sufficient information and belief to either admit or deny the allegations of paragraph 7.

8.     Standards development also reduces costs for both suppliers and purchasers. For suppliers, standardization reduces the need in many instances to develop products to a particular purchaser's specifications. Accordingly, because a single product or product line may be sold to multiple purchasers and distributed more widely, manufacturing volumes increase and per unit of costs decrease. Purchasers benefit from increased price competition among suppliers. Because many suppliers make standard-compliant products, switching suppliers typically does not require a substantial redesign of one's products or a substantial technical transfer to enable the new supplier to produce compatible products. The lower "switching cost" intensifies competition among suppliers, leading to lower prices.

Answer:  L2MT lacks sufficient information and belief to either admit or deny the allegations of paragraph 8.

9.     On the other hand, technical standardization also creates a "lock-in" effect and the risk of "patent hold-up." Although standards are the products of coordination and compromise among competitors, certain aspects of standards may be claimed by patents. Before standardization, the royalty a patentee can earn from a patent license for its technology is constrained in part by the availability of alternative technical approaches to perform that function.

If a standard requires a designer to employ that patented technology, however, those other technological approaches are no longer available substitutes and no longer constrain the patentee's ability to demand royalties far in excess of what is warranted by the intrinsic value of the technology. Moreover, that some end consumers might be able to choose among equipment that practice different standards does nothing to mitigate the fact that a manufacturer is locked into the standard that its equipment practices.

_Answer:_  L2MT admits that certain aspects of standards may be claimed by patents. L2MT

otherwise lacks sufficient information and belief to either admit or deny the remaining allegations

of paragraph 9.

10.     This phenomenon is compounded because technology providers, such as Google, invest great resources in developing products that comply with the technical standard. Even if there were an alternative standard, the costs and disruption associated with switching are typically prohibitively expensive. The designer that implements a standard thus becomes "locked-in." Left unconstrained, owners of patents that purportedly cover certain features within the standard can take advantage of lock-in and demand exorbitant royalties and other terms from the designers, knowing that it would be less costly for the designer to pay the excessive royalty or capitulate to unreasonable terms rather than incur the cost of switching. This dynamic is often called "patent hold-up."

_Answer:_  L2MT lacks sufficient information and belief to either admit or deny the

allegations of paragraph 10.

11.     Accordingly, most standard setting organizations ("SSOs") have adopted Intellectual Property Rights ("IPR") policies to address the problem of patent hold-up. These policies set forth requirements concerning, among other things: (a) disclosure of IPR that may claim any portion of the specification of the standard in development; and (b) whether and to what extent parties holding purported essential IPR must commit to licensing these IPR on FRAND terms and conditions.

_Answer:_  L2MT lacks sufficient information and belief to either admit or deny the

allegations of paragraph 11.

12.     Timely disclosure of purported essential IPR is critical to ensuring that those participating in standards development can evaluate technical proposals with knowledge of the potential licensing costs that designers may incur when developing standards-compliant products.

_Answer:_  L2MT lacks sufficient information and belief to either admit or deny the

allegations of paragraph 12.

**Wireless Telecommunications Standards Published by Standards Setting Organizations**

13.    Wireless telecommunications have been implemented using several open standards, including the 3GPP specifications. ETSI has adopted detailed IPR policies pertaining to the disclosure of IPR that may claim any portion of the specification of the standard in development and whether and to what extent parties holding purported essential IPR must commit to licensing these IPR on FRAND terms and conditions.

<u>Answer:</u>  L2MT admits that ETSI has adopted IPR policies pertaining to the disclosure of IPR that may claim any portion of the specification of the standard in development and whether and to what extent parties holding purported essential IPR must commit to licensing these IPR on FRAND terms and conditions. L2MT otherwise lacks sufficient information and belief to either admit or deny the remaining allegations of paragraph 13.

14.    ETSI has developed a "Rules of Procedure" regarding IPR, entitled "ETSI Intellectual Property Rights Policy." This code of practice requires any party participating in the work of 3GPP to "draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL." The code of practice also requires parties to provide "an irrevocable undertaking in writing" regarding FRAND licensing. ETSI's IPR Policy requires members to make "timely" disclosures of IPR "during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates."

<u>Answer:</u>  Admitted.

**L2MT Fails to Offer FRAND Licenses to Its Patents**

15.    L2MT, as an alleged assignee of the asserted patents and other patents it contends are essential to practice 3GPP standards, is obligated to fulfill the licensing obligations of those patents' prior assignees, including ASUSTeK and Innovative Sonic Ltd. ("Innovative Sonic"). Contrary to the obligations expressed in the FRAND commitments by which it is bound, L2MT did not make an offer to license the patents that it contends are standard-essential on FRAND terms and conditions to Google or otherwise negotiate a FRAND license in good faith before filing its Complaint and, to date, it has not done so.

<u>Answer:</u>  L2MT admits that it is the assignee of the asserted patents, and that it is obligated to fulfill the licensing obligations of those patents' prior assignees, including ASUSTeK and Innovative Sonic. L2MT denies the remaining allegations of paragraph 15.

16.    ASUSTeK and Innovative Sonic submitted, albeit untimely, licensing declarations to ETSI promising to grant licenses to any essential IPR on FRAND terms.

Answer: L2MT admits that ASUSTeK and Innovative Sonic submitted licensing declarations to ETSI promising to grant licenses to any essential IPR on FRAND terms. L2MT denies that such declarations were untimely.

17.     For instance, on information and belief, ASUSTeK and/or its predecessors made the following declaration to ETSI on September 19, 2002:

> The SIGNATORY and/or its AFFILIATES hereby declare that they are prepared to grant irrevocable licenses under the IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain ESSENTIAL.

(*See* September 19, 2002 letter from Tzu-Hsien Tung, Vice-President at ASUSTeK Computer, Inc.)

Answer: Admitted.

18.     Innovative Sonic and/or its predecessors also made a similar irrevocable guarantee to ETSI on August 31, 2011:

> In accordance with Clause 6.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby irrevocably declares the following []: To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are prepared to grant irrevocable licenses under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy.

(*See* August 31, 2011 letter from Sen Feng Chen, General Manager at Innovative Sonic Limited.)

Answer: Admitted.

19.     To date, L2MT has failed to offer Google a single license on FRAND terms for the patents that L2MT contends are essential to practice 3GPP standards, including the asserted patents in the Complaint. Nor, to date, has L2MT otherwise negotiated a FRAND license with Google in good faith. Instead, L2MT has filed this action for patent infringement against Google seeking damages in excess of FRAND terms, as well as an injunction, in violation of the FRAND obligations by which it is bound.

Answer: L2MT admits that it filed this action for patent infringement against Google, but otherwise denies the remaining allegations of paragraph 19.

20.     As explained herein, if L2MT's patents are valid and essential to the 3GPP specifications as L2MT claims, L2MT is in flagrant violation of its obligations to ETSI and to Google.

Answer:  Paragraph 20 contains legal conclusions and arguments to which no response is required. To the extent a response is required, L2MT denies the allegations of paragraph 20.

## FIRST COUNT
## (Declaration of Non-Infringement of U.S. Patent No. 8,179,913)

21.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

22.     On April 9, 2021, L2MT filed a Complaint alleging patent infringement claims against Google.

Answer:  Admitted.

23.     L2MT's Complaint alleges that Google infringes at least claims 1 and 2 of the '913 patent even though Google has not infringed, contributed to the infringement, or induced the infringement of claims 1 and 2 or any other claim of the '913 patent.

Answer:  Admitted that L2MT's Complaint alleges that Google infringes at least claims 1 and 2 of the '913 patent. L2MT denies the remaining allegations of paragraph 23.

24.     An actual, continuing and justiciable controversy exists between Google and L2MT as to Google's non-infringement of all claims of the '913 patent as evidenced by L2MT's Complaint and Google's Answer, set forth above. Absent a declaration of non-infringement, L2MT will continue to wrongfully assert the '913 patent against Google, and will continue to cause Google injury and damage.

Answer:  Admitted that an actual, continuing and justiciable controversy exists between Google and L2MT as to Google's purported non-infringement of all claims of the '913 patent. L2MT denies the remaining allegations of paragraph 24.

25.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '913 patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

Answer:  Admitted that Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '913 patent either literally or under the doctrine of equivalents, willfully, or in any other manner. L2MT denies that Google is entitled to such a declaration.

L2MT further answers that pursuant to Federal Rule of Civil Procedure 12(b)(6), it has moved for an order dismissing this First Count. Google's counterclaim for noninfringement fails to allege sufficient facts from which it could be plausibly inferred that Google does not infringe L2MT's asserted patents. Google's counterclaim includes nothing more than unsupported legal conclusions devoid of any factual bases by which L2MT or this Court could evaluate the plausibility and/or merits of the counterclaim.

## SECOND COUNT
### (Declaration of Invalidity of U.S. Patent No. 8,179,913)

26.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

27.     Due to L2MT's filing of the Complaint, an actual controversy exists between Google and L2MT as to the validity of the '913 patent.

Answer:  Admitted.

28.     The claims of the '913 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

Answer:  Denied.

29.     By way of example, the asserted claims of the '913 patent are invalid based on, for instance, one or more of United States Patent No. 7,646,742 and the prior art references listed on the face of the patents.

Answer:  Denied.

30.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '913 patent are invalid.

Answer:  Admitted that Google requests a judicial determination and declaration that the claims of the '913 patent are invalid. L2MT denies that the claims of the '913 patent are invalid.

### THIRD COUNT
### (Declaration of Non-Infringement of U.S. Patent No. 8,054,777)

31.    Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

32.    On April 9, 2021, L2MT filed a Complaint alleging patent infringement claims against Google.

Answer:  Admitted.

33.    L2MT's Complaint alleges that Google infringes at least claims 1, 6, 8, and 9 of the '777 patent even though Google has not infringed, contributed to the infringement, or induced the infringement of claims 1, 6, 8, and 9 or any other claim of the '777 patent.

Answer:  Admitted that L2MT's Complaint alleges that Google infringes at least claims 1, 6, 8, and 9 of the '777 patent. L2MT denies the remaining allegations of paragraph 33.

34.    An actual, continuing and justiciable controversy exists between Google and L2MT as to Google's non-infringement of all claims of the '777 patent as evidenced by L2MT's Complaint and Google's Answer, set forth above. Absent a declaration of non-infringement, L2MT will continue to wrongfully assert the '777 patent against Google, and will continue to cause Google injury and damage.

Answer:  Admitted that an actual, continuing and justiciable controversy exists between Google and L2MT as to Google's purported non-infringement of all claims of the '777 patent. L2MT denies the remaining allegations of paragraph 34.

35.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '777 patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

Answer:  Admitted that Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '777 patent either literally or under the doctrine of equivalents, willfully, or in any other manner. L2MT denies that Google is entitled to such a declaration.

L2MT further answers that pursuant to Federal Rule of Civil Procedure 12(b)(6), it has moved for an order dismissing this Third Count. Google's counterclaim for noninfringement fails to allege sufficient facts from which it could be plausibly inferred that Google does not infringe L2MT's asserted patents. Google's counterclaim includes nothing more than unsupported legal conclusions devoid of any factual bases by which L2MT or this Court could  evaluate the plausibility and/or merits of  the counterclaim.

## FOURTH COUNT
### (Declaration of Invalidity of U.S. Patent No. 8,054,777)

36.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

37.     Due to L2MT's filing of the Complaint, an actual controversy exists between Google and L2MT as to the validity of the '777 patent.

Answer:  Admitted.

38.     The claims of the '777 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

Answer:  Denied.

39.     By way of example, the asserted claims of the '777 patent are invalid based on, for instance, one or more of United States Patent Publication No. 2004/0203623, and the prior art references listed on the face of the patents.

Answer:  Denied.

40.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '777 patent are invalid.

Answer:  Admitted that Google requests a judicial determination and declaration that the

claims of the '777 patent are invalid. L2MT denies that the claims of the '777 patent are invalid.

## FIFTH COUNT
## (Declaration of Non-Infringement of U.S. Patent No. RE 47,200)

41.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set

forth in each of the paragraphs above.

42.     On April 9, 2021, L2MT filed a Complaint alleging patent infringement claims against Google.

Answer: Admitted.

43.     L2MT's Complaint alleges that Google infringes at least claims 10-14 of the '200 patent even though Google has not infringed, contributed to the infringement, or induced the infringement of claims 10-14 or any other claim of the '200 patent.

Answer:  Admitted that L2MT's Complaint alleges that Google infringes at least claims

10-14 of the '200 patent. L2MT denies the remaining allegations of paragraph 43.

44.     An actual, continuing and justiciable controversy exists between Google and L2MT as to Google's non-infringement of all claims of the '200 patent as evidenced by L2MT's Complaint and Google's Answer, set forth above. Absent a declaration of non-infringement, L2MT will continue to wrongfully assert the '200 patent against Google, and will continue to cause Google injury and damage.

Answer:  Admitted that an actual, continuing and justiciable controversy exists between

Google and L2MT as to Google's purported non-infringement of all claims of the '200 patent.

L2MT denies the remaining allegations of paragraph 44.

45.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '200 patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

Answer:  Admitted that Google requests a judicial determination and declaration that Google does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '200 patent either literally or under the doctrine of equivalents, willfully, or in any other manner. L2MT denies that Google is entitled to such a declaration.

L2MT further answers that pursuant to Federal Rule of Civil Procedure 12(b)(6), it has moved for an order dismissing this Fifth Count. Google's counterclaim for noninfringement fails to allege sufficient facts from which it could be plausibly inferred that Google does not infringe L2MT's asserted patents. Google's counterclaim includes nothing more than unsupported legal conclusions devoid of any factual bases to permit L2MT or this Court to evaluate the plausibility and/or merits of the counterclaim.

## SIXTH COUNT
### (Declaration of Invalidity of U.S. Patent No. RE 47,200)

46.    Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

47.    Due to L2MT's filing of the Complaint, an actual controversy exists between Google and L2MT as to the validity of the '200 patent.

Answer:  Admitted.

48.    The claims of the '200 patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

Answer:  Denied.

49.    By way of example, the asserted claims of the '200 patent are invalid based on, for instance, one or more of United Kingdom Patent Application No. GB2375005A, and the prior art references listed on the face of the patents.

Answer:  Denied.

50.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Google requests a judicial determination and declaration that the claims of the '200 patent are invalid.

Answer:  Admitted that Google requests a judicial determination and declaration that the claims of the '200 patent are invalid. L2MT denies that the claims of the '200 patent are invalid.

### SEVENTH COUNT
### (Declaration of Obligation to License Standard Essential Patents on FRAND Terms)

51.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

52.     On information and belief, ASUSTeK, including its related entities, affiliates, and successors- and predecessors-in-interest, have participated in the development and implementation of industry standards through their membership and participation in SSOs, such as 3GPP and ETSI. ASUSTeK and Innovative Sonic submitted irrevocable licensing declarations committing to license their intellectual property on FRAND terms. As an alleged assignee of the asserted patents, L2MT must comply with the licensing declarations submitted by ASUSTeK and Innovative Sonic and any other prior assignee of L2MT patents. Accordingly, L2MT, including its related entities, affiliates, and successors- and predecessors-in-interest, is obligated by FRAND commitments made to ETSI.

Answer:  Admitted that ASUSTeK and its affiliates have participated in the development and implementation of industry standard through their membership and participation in SSOs, such as 3GPP and ETSI. L2MT lacks sufficient information and belief to admit or deny whether ASUSTeK's related entities and successors- and predecessors-in-interest have participated in the development and implementation of industry standards through their membership and participation in SSOs, such as 3GPP and ETSI.

L2MT admits that ASUSTeK and Innovative Sonic submitted licensing declarations committing to license their intellectual property on FRAND terms, that L2MT must comply with the licensing declarations submitted by ASUSTeK and Innovative Sonic and any other prior assignee of L2MT patents, and that L2MT is obligated by FRAND commitments made to ETSI.

53.     As members of the public that would potentially implement the standards and specifications set forth by ETSI, Google, its vendors and its customers, are intended third-party beneficiaries of the contractual commitments and obligations to ETSI, including those made by ASUSTek and Innovative Sonic.

Answer:  Paragraph 53 contains legal conclusions and arguments to which no response is

required. To the extent a response is required, L2MT denies the allegations of paragraph 53.

54.     On information and belief, to the extent that any of the claims of the asserted patents in the Complaint are infringed by Google, that infringement is a result of implementing one or more standards promulgated by 3GPP to which L2MT has contractual commitments to offer FRAND licenses.

Answer:  L2MT admits that the asserted patents are essential to one or more of the 3GPP

standards, and that therefore L2MT has contractual commitments to offer FRAND licenses to the

asserted patents. L2MT further admits that Google infringes the asserted patents as a result of its

implementation of one or more standards promulgated by 3GPP. L2MT is without knowledge or

information sufficient to form a belief regarding the remaining allegations of paragraph no. 54, in

particular to the extent Google is alleging its infringement is only the result of Google's

implementation of one or more standards promulgated by 3GPP, and therefore denies the

allegations.

55.     Accordingly, to the extent that any of the claims of the asserted patents in the Complaint are deemed essential to the implementation of any standard or specification set forth by 3GPP, then L2MT is obligated to provide Google with a license to such claims on FRAND terms.

Answer:  Admitted.

56.     An actual, continuing and justiciable controversy exists between L2MT and Google as to Google's right to a license to the asserted patents in the Complaint on FRAND terms. Absent a declaration of Google's rights to such a license, L2MT will continue to wrongfully assert one or more of the asserted patents against Google, and continue to cause Google injury and damage.

Answer:  Admitted that an actual, continuing and justiciable controversy exists between

L2MT and Google. L2MT denies the remaining allegations of paragraph 56.

57.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* Google requests a judicial determination and declaration that Google is entitled to a license on FRAND

terms to any one or more of the asserted patents in the Complaint deemed essential to an implementation of any standard or specification set forth by 3GPP.

Answer:  L2MT admits that Google requests a judicial determination and declaration that Google is entitled to a license on FRAND terms to any one or more of the asserted patents in the Complaint deemed essential to an implementation of any standard or specification set forth by 3GPP. L2MT denies that Google is entitled to such a declaration.

## EIGHTH COUNT
## (Breach of Contract – FRAND)

58.   Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set forth in each of the paragraphs above.

59.   As set forth above, through their participation, implementation and/or declarations, ASUSTeK, Innovative Sonic and other ETSI members, including their related entities, affiliates, and successors- and predecessors-in-interest, committed to license any patent essential to practice a 3GPP standard, to all implementers of those standards. As an alleged assignee of the asserted patents, L2MT must comply with the licensing declarations submitted by ASUSTeK and Innovative Sonic. On information and belief, as set forth above, L2MT is bound by the FRAND contractual commitments and obligations that ASUSTeK and Innovative Sonic made and/or created, including with respect to each asserted patent to the extent necessary to practice a 3GPP specification. L2MT contends that each of the asserted patents is essential to the 3GPP standard. To the extent L2MT purports to be the assignee of additional patents that it contends are essential to the 3GPP standard and are the subject of FRAND commitments made to ETSI, L2MT is bound by those contractual commitments and obligations as well.

Answer:   L2MT admits that through their participation, implementation and/or declarations, ASUSTeK and Innovative Sonic have committed to license their intellectual property on FRAND terms, and that L2MT must comply with the licensing declarations submitted by ASUSTeK and Innovative Sonic made and/or created, including with respect to each asserted patent to the extent necessary to practice a 3GPP specification. L2MT further admits that each of the asserted patents is essential to the 3GPP standard, that it is the assignee of additional patents that are essential to the 3GPP standard and are the subject of FRAND commitments made to ETSI,

and that it is bound by those contractual commitments and obligations as well. L2MT lacks sufficient information and belief to admit or deny whether other ETSI members, and their related entities, affiliates, and successors- and predecessors-in-interest, committed to license any patent essential to practice a 3GPP standard, to all implementers of those standards. Further, L2MT lacks sufficient information and belief to admit or deny whether ASUSTeK's and Innovative Sonics's related entities and successors- and predecessors-in-interest committed to license any patent essential to practice a 3GPP standard, to all implementers of those standards.

60.     As an implementer of 3GPP specifications, Google is an intended third-party beneficiary to and obtains the benefit of the contractual commitments and obligations of ETSI members, including their related entities, affiliates, and successors- and predecessors-in-interest, including L2MT, with respect to each declared patent to the extent necessary to practice a 3GPP specification.

Answer:  Paragraph 60 contains legal conclusions and arguments to which no response is required. To the extent a response is required, L2MT denies the allegations of paragraph 60.

61.     As a member of the wireless telecommunications community and the public at large, Google is an intended third-party beneficiary to and obtains the benefit of the contractual commitments and obligations of ETSI members, including their related entities, affiliates, and successors- and predecessors-in-interest, including L2MT, with respect to each declared patent to the extent necessary to practice a 3GPP specification.

Answer:   L2MT admits that Google is a member of wireless telecommunications community and the public at large. The remaining allegations in paragraph 61 contains legal conclusions and arguments to which no response is required. To the extent a response is required, L2MT denies the allegations of paragraph 61.

62.     Representatives from Google and L2MT engaged in negotiations regarding a license to patents that L2MT contends are essential to one or more 3GPP standards, including the asserted patents in the Complaint. When L2MT commenced negotiations with Google, it was obligated under French law, which governs the FRAND commitments by which L2MT is bound, to negotiate in good faith towards a FRAND license with Google, yet L2MT has failed to do so.

Answer:  Denied that L2MT has failed to negotiate in good faith towards a FRAND license with Google. L2MT admits the remaining allegations of paragraph 62.

63.     During the parties' negotiations, L2MT offered to license its patents, including the asserted patents in the Complaint, to Google, but insisted on unreasonably high, unfair, not reasonable, and discriminatory terms and conditions. In doing so, L2MT violated its contractual commitment to license patents that it contends are essential on FRAND terms, effectively depriving Google of its right as a third-party beneficiary to a license to patents L2MT contends are essential on FRAND terms.

Answer:  Admitted that L2MT offered to license its patents, including the asserted patents

in the Complaint, to Google. L2MT denies the remaining allegations of paragraph 63.

64.     At all times during the negotiations between L2MT and Google, Google was willing to license L2MT's patents on FRAND terms and conditions. Google made a counter-proposal to L2MT for a license to L2MT's patents, including the asserted patents in the Complaint. Google's counter-proposal was reasonable and took into account the appropriate value of L2MT's patent portfolio. L2MT rejected Google's counter-proposal and instead insisted on unreasonably high, non-FRAND terms and conditions. In doing so, L2MT violated its contractual commitment to license patents that it contends are essential on FRAND terms, effectively depriving Google of its right as a third-party beneficiary to a license to patents L2MT contends are essential on FRAND terms.

Answer:  Admitted that Google made a counter-proposal to L2MT for a license to L2MT's

patents, including the asserted patents in the Complaint. L2MT denies the remaining allegations

in paragraph 64.

65.     L2MT's positions are inconsistent with the contractual commitments to ETSI relating to the patents that L2MT contends it owns and are essential to 3GPP standards, including those set forth in ASUSTeK and Innovative Sonic's licensing declarations to ETSI and the ETSI IPR Policy. L2MT breached these contractual obligations, by refusing to license patents that it contends are essential to 3GPP standards, including the asserted patents in the Complaint, to Google on FRAND terms, and initiating this lawsuit and seeking injunctive relief without abiding by the terms of those commitments and obligations. Seeking an injunction against a willing licensee like Google is a violation of L2MT's FRAND commitments.

Answer:  Denied.

66.     This breach includes L2MT's claims of infringement, notwithstanding that Google has a right to a FRAND license to those patents, to the extent that any of asserted patents in the Complaint are essential to the practice of a 3GPP specification.

Answer:  L2MT denies the existence of any contractual breach. L2MT otherwise admits

that Google has a right to a FRAND license to the asserted patents which are essential to the

practice of a 3GPP specification.

67.     This breach includes L2MT's failure to offer a license to Google on FRAND terms and initiating this suit prior to any offer to license on FRAND terms. This suit places excessive pressure on Google to license the asserted patents in the Complaint at supra-competitive prices, and destroys the possibility of true FRAND negotiations.

Answer:  Denied.

68.     As a result of these and other contractual breaches, Google has been injured in its business and property. Google has been forced to expend resources in futile negotiations and defending this case, including against L2MT's claim of infringement, and has suffered or faces the threat of increased costs, loss of profits, loss of customers or potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

Answer:  Denied.

69.     L2MT's breach has caused Google to suffer actual damages, such as Google's costs and expenses in pursuing futile negotiations with L2MT, in an amount to be determined at trial. In addition, Google is further entitled to obtain specific performance under French law.

Answer:  Denied.

70.     Google has suffered and will continue to suffer irreparable injury by reason of the acts, practices, and conduct of L2MT alleged above until and unless the Court enjoins such acts, practices, and conduct.

Answer:  Denied.

## NINTH COUNT
## (Breach Of Obligation To Negotiate In Good Faith)

71.     Google realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

Answer:  L2MT repeats and incorporates by reference its responses to the allegations set

forth in each of the paragraphs above.

72.     French law governs the ETSI FRAND commitment, and under French law, once L2MT commenced negotiations with Google for a license, L2MT was obligated to negotiate in good faith towards a license on FRAND terms and conditions. L2MT has failed to negotiate in good faith with Google and thus breached its obligation. For example, rather than engage in good-faith negotiations, L2MT did not seriously engage in negotiations with Google with the aim of concluding an agreement on FRAND terms and conditions, and instead made an unreasonably high license offer, effectively depriving Google of a license to L2MT's allegedly essential patents on FRAND terms.

Answer:  Admitted that French law governs the ETSI FRAND commitment, and under French law, once L2MT commenced negotiations with Google for a license, L2MT was obligated to negotiate in good faith towards a license on FRAND terms and conditions. L2MT denies the remaining allegations of paragraph 72.

73.   L2MT's failure to negotiate in good faith constitutes a breach of its obligations to Google.

Answer:  Paragraph 73 contains legal conclusions and arguments to which no response is required. To the extent a response is required, L2MT denies the allegations of paragraph 73.

74.   There is a dispute between L2MT and Google concerning whether L2MT has complied with its obligation to negotiate in good faith, and this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Answer:  Admitted.

75.   Google is entitled to a declaratory judgment that L2MT has not complied with its obligation to act in good faith during its negotiations with Google in regard to FRAND terms for a license to L2MT's allegedly essential patents.

Answer:  Paragraph 75 contains legal conclusions and arguments to which no response is required. To the extent a response is required, L2MT denies the allegations of paragraph 75.

76.   As a result of L2MT's breach of its duty to negotiate in good faith, Google has been injured in its business or property, including Google's cost and expenses in pursuing futile negotiations with L2MT, in an amount to be determined at trial.

Answer:  Denied.

## **PRAYER FOR RELIEF**

No response is necessary to a prayer for relief. To the extent a response is required, L2MT denies that Google is entitled to any of the relief requested, or any other relief, and further requests that the Court provide L2MT with the following requested relief:

A.   Judgment that the counterclaims be dismissed with prejudice;

B.   Judgment that this is an exceptional case pursuant to 28 U.S.C. § 285;

C.    An award to L2MT of its attorneys' fees and costs; and

D.    Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P 38(b), L2MT hereby demands a trial by jury of all issues so

triable that are raised herein or which hereinafter may be raised in this action.

Dated: August 10, 2021                    Respectfully submitted,

By: */s/ Joseph F. Marinelli*
Timothy P. Maloney (IL 6216483)
Joseph F. Marinelli (IL 6270210)
Evan J. Kline-Wedeen (IL 6329941)
**FITCH, EVEN, TABIN & FLANNERY LLP**
120 S. LaSalle St., Suite 2100
Chicago, IL 60603
Telephone: 312.577.7000
tim@fitcheven.com
jmarinelli@fitcheven.com
eklinewedeen@fitcheven.com

*Attorneys for Plaintiff*
*L2 Mobile Technologies LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served on August 10, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Joseph F. Marinelli*
Joseph F. Marinelli
