## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| L2 MOBILE TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case Nos. 6:21-cv-00358-ADA<br><br><br><br>JURY TRIAL DEMANDED |

## DEFENDANT GOOGLE LLC'S REPLY CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................1

II.   CLAIM TERMS ...................................................................................................1

    A.    Order Of Method Steps ['200 patent, Claim 10] .....................................1

    B.    "consisting of corresponding security count values of the established channels in the wireless communications device that utilize the second key" ['200 patent, Claims 10, 14] .................................................................3

    C.    "the first value is at least as great as the x most significant bits (MSBx) of a value in the first set and at least one of the established channels utilizing the first security key" ['200 patent, Claim 10] ..............................................3

    D.    "a first predetermined value" ['200 patent, Claims 10, 11].....................6

    E.    "only reestablishing the receiving side in the RLC entity of the communications device" ['777 patent, Claims 1 and 2] / "reestablishing the receiving side" ['777 patent, Claims 1 and 2]..........................................8

    F.    "Move Receiving Window (MRW) Acknowledgement (ACK) Status PDU" ['777 patent, Claims 1 and 2]................................................................10

    G.    "accurately reestablishing the receiving side" ['777 patent, Claim 2].................10

    H.    "control circuit" ['777 patent, Claim 2; '913 patent, Claim 3]............................12

    I.    "reset procedure" ['913 patent, Claims 1 and 3].................................14

III.   CONCLUSION.................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Advanced Ground Info. Sys., Inc. v. Life360*,
  830 F.3d 1341 (Fed. Cir. 2016)................................................................ 12

*Avocent Huntsville, LLC v. ZPE Sys., Inc.*,
  No. 17-CV-04319-WHO, 2018 WL 4677437 (N.D. Cal. Aug. 23, 2018) ............................ 13

*Bell Commc'ns, Inc. v. Vitalink Commc'ns Corp.*,
  55 F.3d 615 (Fed. Cir. 1995)................................................................ 11

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)................................................................ 10

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)................................................................ 11

*Chef America v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004)................................................................ 5

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
  899 F.3d 1291 (Fed. Cir. 2018)................................................................ 13

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020)................................................................ 12

*Grecia v. Samsung Elecs. Am., Inc.*,
  780 F. App'x at 913-16 ................................................................ 12

*Hoganas AB v. Dresser Industries, Inc.*,
  9 F.3d 948 (Fed. Cir. 1993)................................................................ 4, 6

*Innovative Sonic Ltd. v. Research In Motion Ltd.*,
  2012 WL 4928897, Case No. 11-cv-0706 (N.D. Tex., Oct. 17, 2012)................................ 7, 8

*In re Fought*,
  941 F.3d 1175 (Fed. Cir. 2019)................................................................ 11

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)................................................................ 7

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
  355 F.3d 1361 (Fed. Cir. 2004)................................................................ 7

*Morris Reese v. Samsung Telecomms. Am.*,
  No. 2:05-CV-415-DF, 2006 WL 6112195 (E.D. Tex. Dec. 5, 2006) ................................ 15

*Nautilus, Inc. v. Biosig Instruments*,
  134 S. Ct. 2120 (2014)................................................................ 4

*Nichia Corp. v. Vizio, Inc.*
  No. 16-0545 SJO-MRW, 2019 WL 1966664 (C.D. Cal. Mar. 13, 2019)
  *vacated at request of parties*, No. 8:16-cv-00545-SJO-MRW, 2019 WL 7281927 (C.D. Cal.
  Apr. 16, 2019) ..................................................................................................................... 13

*Noah Sys. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012) ........................................................................................... 13

*Northern Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990) ............................................................................................... 6

*Process Control Corp. v. HydReclaim Corp.*,
  190 F.3d 1350 (Fed. Cir. 1999) ............................................................................................. 5

*Randall May Intern., Inc. v. DEG Music Prods., Inc.*,
  378 Fed.Appx. 989 (Fed. Cir. 2010) ...................................................................................... 4

*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243 (Fed. Cir. 1998) ............................................................................................. 3

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ............................................................................................... 3

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) ..................................................................................... 12, 13

## Statutory Authorities

35 U.S.C. § 112 ............................................................................................................................ 5

## I.     INTRODUCTION

Defendant Google LLC ("Google") submits this reply brief pursuant to the parties' Joint Notice of Agreed Changes to Scheduled Deadlines to construe the terms of RE47,200 (the "'200 patent"); 8,054,777 (the "'777 patent"); and 8,179,913 (the "'913 patent"). Dkt. 39. As explained in Google's Opening Brief (Dkt. 35, hereinafter "Def. Br.") and further set forth below, the Court should adopt Google's proposed constructions.

## II.    CLAIM TERMS

### A.     Order Of Method Steps ['200 patent, Claim 10]

In its response, L2MT agrees that certain limitations must be performed in a specified order. Pl. Br., 4-5. L2MT agrees that

- "step 10(a) must be performed before 10(b)" (Pl. Br., 4);

- "step 10(d) must occur after step 10(c)" (Pl. Br., 4); and

- step 10(f) "is performed after 10(e)" (Pl. Br., 5).

Accordingly, there are only two remaining areas of dispute: 1) whether step 10(d) must occur before step 10(e); and whether step 10(b) must occur before step 10(c).

As to the first issue—whether step 10(d) must occur before step 10(e)—the specification is unambiguous. Indeed, it states that the first value is not obtained (step 10(e)) *until after* the key is assigned (step 10(d)): "The second security *key is assigned* to the new channel. A *first set* is ***then*** used to *obtain a first value*." Dkt. 1-3 at 6:21-22 (emphasis added). The patentee's statements during prosecution also confirms this order. *See* Dkt. 36-1, 6 (explaining that the second security key is assigned and then "next" the first value is obtained). L2MT vaguely asserts that steps 10(e) (and 10(f)) could occur "before, during, or after step 10(d) is performed," but it cites to *zero* evidence for this assertion. Pl. Br., 5. Given the unambiguous teaching of the intrinsic evidence, step 10(d) must occur before step 10(e).

The lone question remaining then is—when must step 10(b) occur? As an initial matter, Google maintains its argument that all of the steps must be recited in order and requests the Court order as such. But in the interest of narrowing the disputes before the Court, Google would be willing to stipulate that step 10(b) must be performed after step 10(a) and before step 10(d). Accordingly, Google would be amenable to the following construction for claim 10: "The steps of the claim must be performed in the recited order, except that step 10(b) must be performed after step 10(a) and before step 10(d)."

L2MT already agreed that step 10(b) must occur after step 10(a). Pl. Br., 4. With respect to step 10(b) occurring before step 10(d), L2MT does not address this issue. The intrinsic evidence, however, supports step 10(b) occurring before step 10(d). Specifically, step 10(b) recites performing a "security mode reconfiguration," which is otherwise referred to in the specification as a "security mode command." *See, e.g.*, Dkt. 1-3, '200 patent at 3:23-26; 4:36-54. Further, step 10(d) recites "assigning the second security key to the new channel"; the patentee explained during prosecution that the second security key is assigned to the new channel "***due to a security mode command***." Dkt. 36-1, 6. Thus, step 10(d) occurs only "***due to***" the "security code reconfiguration" recited in step 10(b) and, thus, could not be performed before step 10(b). *Id*. Moreover, the term "***a*** second security key" is created and defined in step 10(b); step 10(d) then references the previously-introduced "***the*** second security key."

Accordingly, all steps must be performed in the recited order. Alternatively, Google also agrees to the construction that all steps of the claim must be performed in the recited order, except that step 10(b) must be performed after step 10(a) and before step 10(d).

**B.**     **"consisting of corresponding security count values of the established channels in the wireless communications device that utilize the second key" ['200 patent, Claims 10, 14]**

In L2MT's responsive Markman, L2MT notes that it will now agree to "accept the plain and ordinary meaning of this language." Pl. Br., 6. Accordingly, this Court should adopt Google's proposed construction—plain and ordinary meaning.

**C.**     **"the first value is at least as great as the x most significant bits (MSBx) of a value in the first set and at least one of the established channels utilizing the first security key" ['200 patent, Claim 10]**

In construing this limitation, L2MT goes beyond clarifying the claim limitation, it resorts to re-writing the claim term by: 1) ***adding*** terms and punctuation that do ***not*** currently exist; 2) ***removing*** terms that ***do*** currently exist; and 3) ***revising*** other terms to fit the scope that L2MT desperately desires. L2MT cannot and does not dispute that the plain reading of the term as drafted is nonsensical—that is why L2MT proposed a construction that substantially deviates from its plain and ordinary meaning in an attempt to salvage this claim. At bottom, the Court's construction of this claim term must "***accord with the words chosen by the patentee*** to ***stake out the boundary*** of the claimed property." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (emphasis added). L2MT's construction defies this principle by rewriting the claim language to change the scope of the claim. And as Google explained in its Opening Brief, it would violate the public's right to rely on the language of claims as drafted if L2 were to be able to change the meaning of the claims at this late stage after having submitted a claim with an ***entirely different meaning*** during prosecution. Def. Br. 13-14, citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (explaining that claims may not be "construed one way in order to obtain their allowance and in a different way against accused infringers"); *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993). Notably, L2MT failed to explain in its response how its proposed construction passes muster under *Southwall*.

Here, *as drafted*, the plain language of the term recites that "the first value" must be **(1)** "at least as great as": **(a)** "the x most significant bits (MSBx) of a value in the first set" and **(b)** "at least one of the established channels utilizing the first security key." Accordingly, clause **(1)** applies to both clauses **(a)** and **(b)** above. Tellingly, L2MT offers no other reasonable grammatical interpretation of the claim *as drafted*. Instead, L2MT resorts to changing the scope of the claim— specifically, L2MT inserts a *period* and the phrase "In addition" prior to clause **(b)** to separate clause **(b)** into *its own sentence*, thereby eliminating clause **(1)** from the requirement of clause **(b)**. *See* L2MT's proposed construction.

L2MT misunderstands *Randall May Intern., Inc. v. DEG Music Prods., Inc.*, 378 Fed.Appx. 989 (Fed. Cir. 2010), cited in Defendant's Brief. Def. Br. 12. *Randall May* highlights a basic grammatical concept—the phrase "at least as great as" grammatically applies to the rest of the language in the claim term (clauses **(a)** and **(b)** *supra*) because it immediately precedes the entire remainder of the term. *Id.* at 997. That is the only reasonable construction. *Id.* ("the claim language teaches that the shoulder supporting members should be 'changeable' or 'adjustable': these terms ***immediately precede*** the term 'shoulder supporting members' and the ***only reasonable construction***, therefore, is that these shoulder supporting members themselves, rather than the entire assembly, should be adjustable or changeable") (emphasis added).

L2MT asserts that a reading which renders the claim nonsensical "does not demonstrate indefiniteness." Pl. Br., 8. But L2MT's argument misses the mark. As Google explained in its Opening Brief, claim 10 is indefinite for failing "to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments*, 134 S. Ct. 2120, 2124 (2014). Def. Br. 13. Here, Google's expert, Dr. Mark Mahon—a person skilled in the art— confirms that he cannot determine the scope of this limitation as drafted. Mahon Decl. at ¶¶ 46-

51. Specifically, he opines that claim 10 is indefinite because the term at issue requires that a certain ***numerical value***—i.e., a "first value"—be "at least as great as" an item that is ***not*** a numerical value—"at least one of the established ***channels***." *Id*. ¶ 51. Thus, those skilled in the art are not informed as to the scope of the claim due to the comparison of "value" to "channels." As such, the claim fails to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (pre-AIA).

L2MT misinterprets *Chef America v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004), cited in Defendant's Opening Brief. Def. Br. 14. Specifically, L2MT contends that in *Chef America*, "the claim was susceptible to only one reasonable interpretation after review of the intrinsic record." *Id*. L2MT seeks to persuade this Court that the only "reasonable interpretation" of the claim is to completely redraft it. That notion is contrary to the holding of *Chef America*. *Chef America*, 358 F.3d at 1374 (explaining that "in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it"). Indeed, L2MT's assertion that the claim as currently drafted ***does not operate as the patentee intended*** is precisely the same argument that was rejected in *Chef America*. *Id*. at 1375. Accordingly, as in *Chef America*, this Court should decline to redraft the claim merely to sustain its validity. *Id*. ("courts may not redraft claims, whether to make them operable or to sustain their validity").

In sum, and contrary to Federal Circuit law, L2MT asks this Court to use the written description to circumvent the plain language of the claim. *See Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("The district court's attempt to use the written description to circumvent the plain language of the claim and the clear definition of the disputed claim language found therein was inappropriate."). Indeed, adopting L2MT's proposed construction would give an unfair windfall to L2MT, as the public was never on notice of the claim

scope L2MT now seeks. *See Hoganas*, 9 F.3d at 951 ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error. . . . That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention."). Accordingly, the Court should find the term indefinite.

**D.**     **"a first predetermined value" ['200 patent, Claims 10, 11]**

As an initial matter, L2MT does not dispute that "default value" is the only possible definition provided in the intrinsic evidence for "predetermined value." L2MT has not cited a single line in the '200 patent's written description or prosecution history to support the use of "predetermined." Instead, L2MT points to the recital of "a first predetermined value" in the original claims of the predecessor '183 patent application, relying on *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 938 (Fed. Cir. 1990), for the assertion that "[t]he original claims of a patent application are part of the patent specification." Pl. Br. 12. But *Northern Telecom* was examining a district court's finding of inequitable conduct due to the filing of an "Amendment Under Rule 312" during prosecution. 908 F.2d at 938 (analyzing whether the scope of the claims had been enlarged and concluding that "the claims as originally filed and as allowed were already of the challenged scope, and were already part of the disclosure"). Accordingly, *Northern Telecom* is irrelevant to the situation here—rather than analyzing whether a claim's scope has been enlarged, the Court here is tasked with using the intrinsic evidence as context for determining the meaning of the claim term. Thus, even if the original '183 patent application recited "a first predetermined value," it does not add any useful context for the Court's inquiry since the vague recital of "first predetermined value" in the original claims does not provide any insight for the Court as to the meaning of this term. On the contrary, it merely shows that the patentee was repeatedly using a term in its claims that had zero support in the written description.

L2MT further asserts that there "is no ambiguity of language requiring construction." Pl. Br., 11. But the meaning of the word "predetermined" is ambiguous on its face. Indeed, the term begs a temporal question—*when* must the first value precisely have been "predetermined" in order for this limitation to be met? The claim itself provides no answer. Given that the parties already dispute the proper order of steps for claim 10, *see supra*, the term "predetermined" only further adds to the ambiguous nature of *when* certain steps must occur in order for this claim to be infringed. Accordingly, the Court should adopt Google's proposed construction—"a first default value"—since this is the *only* definition provided in the intrinsic evidence for what "a first predetermined value" might mean and would erase any ambiguity as to the required timing of when this limitation must occur.

L2MT's other cited cases are unpersuasive because none discuss the issue presented here—a *temporal* ambiguity in a disputed claim term. In *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004), the court found no ambiguity in the term "opening," which is irrelevant for construing a term with a temporal element like "predetermined." Likewise in *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361 (Fed. Cir. 2004), the Federal Circuit found no ambiguity in the term "substantial helical flow." *Liquid*, 355 F.3d at 1368-69. And L2MT's dictionary definition of "predetermined" is unhelpful, as it does not describe *when* the first value must be "predetermined" in the context of this claim. Pl. Br., 11.

Finally, L2MT notes that a prior Court adopted the plain and ordinary meaning of this term during *Markman* proceedings involving the predecessor '183 patent. Pl. Br., 12 (citing *Innovative Sonic Ltd. v. Research In Motion Ltd.*, 2012 WL 4928897, Case No. 11-cv-0706, *11 (N.D. Tex., Oct. 17, 2012). But the claims at issue here were not before the *Innovative Sonic* court; the claims asserted here were added during reexamination *after* the *Markman* hearing in that case. Notably,

the parties in *Innovative Sonic* did not dispute the order of steps of any of the claims at issue (as explained above), *Id*. at *4-*11, and thus the claims did not present the same ambiguity regarding the temporal element of the word "predetermined."

        E.      **"only reestablishing the receiving side in the RLC entity of the communications device" [']777 patent, Claims 1 and 2] / "reestablishing the receiving side" [']777 patent, Claims 1 and 2]**

L2MT's brief made clear that it does not dispute at least the following:

- Google's construction captures the patentee's express disclaimer made during prosecution of the '777 patent at the PTO;

- the applicant made explicit concessions on the claimed reestablishment procedure in order to overcome a statutory double patenting rejection;

- the applicant argued that the application that led to the '777 patent was directed to a *reestablishment* procedure while the co-pending application on which the rejection was based is directed to entirely different subject matter, a *reset* procedure; and

- if the claims were to cover a reset procedure, then the entire purpose of the alleged invention would be negated.

Pl. Br., 16-19. This should end the Court's inquiry. Nevertheless, and as further detailed in Google's Opening Brief (Def. Br. at 16-19), the applicant made clear to the patent examiner that the claimed "reestablishment procedure" involves "chang[ing] the original configured values for the RLC entity . . . to the newly configured values" and that the reset procedure involves a "procedure [] triggered to recover the protocol error," after which "all the state variables, timers and configured values are set to the original states or original configured values." The applicant made these statements in order to overcome a double patenting rejection, thus clearly disavowing claim scope that goes beyond these definitions. Google's proposed construction is the only construction that is consistent with the applicant's direct and specific disclaimers.

L2MT's proposed construction does not adequately address the disclaimed subject matter during prosecution, and unnecessarily injects ambiguity into the scope of the asserted claims. Embedded in L2MT's construction is the requirement that the transmitter side of the RLC is not "re-established," but L2MT fails to explain exactly what this means or even the scope of such a limitation. For example, does "without the transmitter" requirement mean that while reestablishing the receiving side, the RLC cannot reestablish the transmitter side?  Perhaps it means that the RLC may reestablish the transmitter side, but after the receiving side. Or can the RLC never reestablish the transmitter side? L2MT's proposed construction injects ambiguity into the claims and would confuse a jury.

L2MT wrongly contends that Google's proposed construction does not account for "state variables." There is nothing in Google's proposed construction that limits or restricts other actions of the RLC entity during re-establishment. However, even the portion of the prosecution history that L2MT cites makes clear that during reestablishment the configurable parameters are changed. That ancillary actions are being performed by the RLC does not change the core function of the reestablishment procedure, which is captured by Google's construction.

Finally, L2MT complains about Google's alleged negative limitation, but L2MT does not dispute that "reestablishing the receiving side of an RLC entity is a different procedure than resetting an RLC entity" or even "that some differences [between the two] were mentioned during prosecution." Pl. Br., 16. Nor can it. L2MT simply glosses over the applicant's remarks in hopes of distracting the Court. During prosecution, the applicant unmistakably stated that "the reset procedure is different from the re-establishment procedure." Def. Br., 18; *id.* at 19 ("one can be sure that a re-establishment is different from a reset."). Far from "complicating" the claims, Google's construction provides the jury with clarity as to the proper scope of the claim.

F.      **"Move Receiving Window (MRW) Acknowledgement (ACK) Status PDU"
        ['777 patent, Claims 1 and 2]**

This term should be afforded its plain and ordinary meaning. L2MT's proposed construction of "a Status PDU including an indication of MRW ACK" is wrong for two reasons. *First*, L2MT's proposed construction would improperly read out the requirement that MRW ACK is a PDU. The specification consistently refers to the MRW ACK as the PDU. *E.g.,* Dkt. 1-2 at 5:53-57; *id.* at 5:43-46. L2MT does not address this in its brief. *Second*, as mentioned in Google's Opening Brief, under L2MT's improper construction, the MRW ACK is not a PDU but rather an "indication" that is included in a status PDU. But L2MT fails to explain what "indication" means in this context, and L2MT's construction nevertheless reads out the requirement that the MRW ACK is a PDU. Mahon Decl. at ¶¶ 52-60. This term should be given its plain and ordinary meaning.

G.      **"accurately reestablishing the receiving side" ['777 patent, Claim 2]**

Google's Opening Brief explained that the '777 patent does not provide any objective boundaries for the term "accurately" when used in conjunction with "reestablishing the receiving side." *See, e.g.*, Dkt. 1-2 at 3:8-11; *id.* at 2:51-56; 437-40; 5:58-65; 6:4-9. L2MT does not address these passages. L2MT also fails to address the Federal Circuit's opinion in *Berkheimer*, which is on point, and cited in Google's Opening Brief (Def. Br. at 23). *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363-64 (Fed. Cir. 2018). As Google explained, here, as in *Berkheimer*, the preamble of claim 2 of the '777 patent merely recites "accurately" without providing any specificity about what exactly it means to be "accurate."

While L2MT contends that "its alternative construction describes exactly what a person skilled in the art would understand 'accurately to mean,' (Pl. Br. at 21), this alternate construction does not provide any clarity for the meaning of the word "accurately." In fact, L2MT's proposed construction injects similar ambiguity as the plain language of the claims, because it gives no

indication on how the word "correctly" limits the term. More specifically, L2MT fails to address what it purportedly means for reestablishment to be "correct" or "incorrect."

L2MT takes issue with the threshold question of whether this term, which is in the preamble, need be construed at all. As Google explained in its Opening Brief (Def. Br. 18-21), the preamble needs to be construed here, because it provides an antecedent basis for the terms found throughout claim 2, including "reestablishing the receiving side." For example, the term "accurately reestablishing the receiving side" is part of the preamble phrase that purportedly explains protocols for receiving side only re-establishment of a communications device. *E.g.,* Dkt. 1-2, claim 2 ("only reestablishing the receiving side in the RLC entity of the communications device.")[1]. For its part, L2MT contends the preamble is not limiting, because the preamble language states a purpose or intended use of the device. Pl. Br., 19. But other than this conclusory sentence, L2MT fails to explain or show exactly what it alleges would be the intended use or purpose. Beyond that, L2MT argues that the preamble is not limiting because the claim defines a structurally complete invention in the claim body, such that deletion of the phrase from the preamble does not affect the structural definition or operation of the invention itself. *Id.* at 20. L2MT is wrong. For example, if reestablishment did not have to be "accurate" (whatever that term means in this context), that would certainly contradict the purported purpose of the invention of increasing efficiency in wireless transmissions. Perplexingly, L2MT's brief also does not point to any alleged "invention" as support for its position, but rather contends that the body of the claim

---

[1]  It should be noted that L2MT also does not meaningfully address the ample precedent Google cited holding that "a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim." *See e.g., In re Fought,* 941 F.3d 1175, 1178 (Fed. Cir. 2019); *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1371, (Fed. Cir. 2020); *Bell Commc'ns, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621 (Fed. Cir. 1995).

recites things that were well-known at the time and not new. Pl. Br. at 20. Accordingly, the Court should find this claim to be invalid as indefinite.

### H.      "control circuit" ['777 patent, Claim 2; '913 patent, Claim 3]

The disputed claim term ("control circuit") recites a function ("for realizing functions of the wireless communications device") without reciting structure sufficient for performing the claimed function. Thus, "control circuit" must be construed under § 112, ¶ 6 and should be found to be indefinite. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc).

The crux of L2MT's argument is that § 112, ¶ 6 does not apply to "control circuit," because the term is tied to other structural components, such as processor, program code, and memory. Pl. Br., 23-24. This argument fails, and was already addressed at length in Google's Opening Brief (Def. Br. at 25-28), which L2MT does not rebut. Specifically, the fact that the claims recite generic hardware in addition to generic software (i.e., processor, program code, and memory) does not save them from § 112, ¶ 6. This is because those hardware elements (processor, program code, and memory) are not linked to the recited functions (realizing functions of the wireless communications device) and are not claimed as performing the recited functions. *Advanced Ground Info. Sys., Inc. v. Life360*, 830 F.3d 1341, 1345-49 (Fed. Cir. 2016) ("symbol generator in [a central processing unit ('CPU')]" subject to § 112 ¶ 6); *Grecia v. Samsung Elecs. Am., Inc.*, 780 Fed. Appx. 912, 913-16 (Fed. Cir. 2019) (construing "customization module" under § 112 ¶ 6 even though it is located on a "computer product comprising a memory, [and] a CPU"); *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1370, 1374-1375 (Fed. Cir. 2020) ("logic" subject to § 112 ¶ 6, despite interacting with "a plurality of computer processors connected to an internal communication network"). L2MT's reliance on Figures 1-3 also does not advance its cause, as these figures merely depict "control circuit" as an empty rectangular box without any structural

detail, or as important, any description of algorithms, routines, or instructions by which to perform the claimed function. *See* Mahon Decl. at ¶¶ 61-69.

As opposed to identifying structure in the claim, L2MT attempts to substitute the lack of structure in the claim with opinions of its expert. L2MT argues that § 112, ¶ 6 does not apply, because its expert Dr. Hernandez contends that "at the time of the inventions of the '777 and '913 patents, control circuitry for wireless devices such as phones was well known in the art," while also relying on extrinsic dictionary definitions. Pl. Br. at 23-24. But the structure must be recited *in the claim*. *Nichia Corp. v. Vizio, Inc.* No. 16-0545 SJO-MRW, 2019 WL 1966664, at *6 (C.D. Cal. Mar. 13, 2019), *vacated at request of parties*, No. 8:16-cv-00545-SJO-MRW, 2019 WL 7281927 (C.D. Cal. Apr. 16, 2019). *Nichia* is instructive here. In *Nichia*, the court found the claim term "tone control circuit" to be subject to § 112 ¶ 6 and to be invalid as indefinite. In that case, the plaintiff attempted to substitute expert testimony to cure the lack of sufficient structure in the claim. The court rejected that argument. *Id.* at *8; *see also, e.g., Williamson*, 792 F.3d at 1349 (under the two-part *Williamson* test, the presumption against the application of § 112, ¶ 6 is overcome if the claim "recites 'function without reciting sufficient structure for performing that function'") (citation omitted); *see also Noah Sys. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (understanding of one skilled in the art cannot substitute for disclosure of structure in patent itself); *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1301-02 (Fed. Cir. 2018) (construing "cheque standby unit" under § 112, ¶ 6 where patentee "did little more than opine that a skilled artisan would understand the functional term 'cheque standby unit' to be any structure capable of performing the claimed function").[2]

---

[2] The majority of cases that L2MT relies on were decided pre-*Williamson* and thus applied the since abrogated "strong presumption" against the application of § 112, ¶ 6 to terms that do not recite "means" and thus should be rejected. *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 17-CV-

Accordingly, the Court should find this claim term to be subject § 112, ¶ 6 and indefinite for failure to recite sufficient structure.

### I.      "reset procedure" ['913 patent, Claims 1 and 3]

L2MT wrongly contends that this term needs no construction or that the preamble is not limiting. Pl. Br., 25. As articulated more fully in Google's Opening Brief (Def. Br. at 28-30), the preamble requires a "reset procedure," which provides the structure and framework for the rest of the claim. Particularly, the applicant provided a definition of a "reset procedure" during prosecution when it distinguished the claimed "reestablishment procedure" of the '777 patent. *Id.* Indeed, in defining a "reset procedure," the applicant stated that "[a]fter the reset procedure, all the state variable, timers and configured values are set to the original states or original configured values." *Id.* L2MT cannot ignore these statements. Notably, although L2MT contends that the preamble is not limiting, it fails to provide any argument—credible or otherwise—as to why this is the case.

In fact, the importance of construing the preamble is even more evident based on L2MT's brief, which makes clear that it is conflating the reset and reestablishment procedures to improperly broaden the claim scope. Pl. Br. at 26-28. That is, L2MT is arguing that since a reset variable is something that is acted upon during reestablishment, the reset procedure and reestablishment procedure must be coupled. *Id.* This is wrong for multiple reasons. *First,* during prosecution, the patentee made unambiguous statements that the reset procedure and reestablishment procedures are separate and indeed not coupled. *E.g.,* Def. Br. at Ex. C ("one can be sure that a re-establishment is different from a reset."). Just because two procedures may occur at the same time, does not necessarily mean that the two procedures are otherwise related. *Second,* the portion of the

---

04319-WHO, 2018 WL 4677437, at *8 n.5 (N.D. Cal. Aug. 23, 2018) (distinguishing cases because they were decided prior to *Williamson*).

specification for the '913 patent (2:24-27) that L2MT relies upon states "when only the RLC entity is re-established, the **current** RLC reset procedure is aborted, and a **new** RLC reset procedure is started." Importantly, statements such as these in the specification are consistent with Google's proposed construction that the two procedures are separate and distinct. Mahon Decl. at ¶¶ 70-74. *Third,* L2MT's position is also contradicted by the '913 patent's prior art, such as the 3GPP TS 25.322 V6.4.0 standard. Critically, this standard also recites multiple sections and passages that illustrate that although the reset and reestablishment procedures may be related, the two procedures are, again, different. For example, section 9.7.7 of this standard defines the reestablishment procedure and is entitled "RLC re-establishment function for acknowledged and unacknowledged mode," and Section 11.4 defines the reset procedure and is entitled "RLC Reset Procedure." These are two separate functions in the standard. *Id.* Beyond that, this standard also states "[w]hen a reset procedure has been initiated it can only be ended upon reception of a RESET ACK PDU with the same RSN value as in the corresponding RESET PDU, or upon request of re-establishment or release from upper layer, a reset procedure is not interrupted by the reception of a RESET PDU from the peer entity." *Id.* Simply put, there is nothing about the reset procedure being a separate procedure that would limit any of its variables from being changed by some other function, at some other time, for some other reason. *Id.*

Recognizing the flaw in its position, L2MT proposes an alternative construction. Yet this proposed alternative gives a "general description" and purports to reset only "certain" variables. But such generalities or vague terms such as "certain" without further explanation unnecessarily inject ambiguity into the claims and does not help the jury. *Morris Reese v. Samsung Telecomms. Am.,* No. 2:05-CV-415-DF, 2006 WL 6112195, at *16 (E.D. Tex. Dec. 5, 2006).

## III.    CONCLUSION

Google respectfully requests that the Court adopt its proposed constructions.

Dated:  December 14, 2021

_____/s/  Paige Amstutz_____
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
pamstutz@scottdoug.com

Charles K. Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com
Andrea Roberts (pro hac vice)
andreaproberts@quinnemanuel.com
 QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100

Kevin Hardy (*pro hac vice*)
kevinhardy@quinnemanuel.com
Deepa Acharya
deepaacharya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202-538-8000
Fax: 202-538-8100

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify

that, on December 14, 2021, all counsel of record who have appeared in this case are being served

with a copy of the foregoing via email.

Dated:  December 14, 2021          _____*/s/ Paige Amstutz*_____

**Paige Amstutz**