IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| L2 MOBILE TECHNOLOGIES LLC,<br><br>Plaintiff<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 6:21-cv-00358-ADA<br><br>The Honorable Alan D. Albright<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF L2 MOBILE TECHNOLOGIES LLC'S
SURREPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II | CLAIM TERMS | 1 |
| | A. Order of Method Steps ['200 Patent Claim 10] | 1 |
| | B. "consisting of corresponding security count values of the established channels in the wireless communications device that utilize the second key" ['200 patent, Claims 10, 14] | 3 |
| | C. "the first value is at least as great as the x most significant bits (MSBx) of a value in the first set and at least one of the established channels utilizing the first security key" ['200 patent, Claim 10] | 3 |
| | D. "a first predetermined value" ['200 patent, Claims 10, 11] | 5 |
| | E. "only reestablishing the receiving side in the RLC entity of the communications device" ['777 patent, Claims 1 and 2] / "reestablishing the receiving side" ['777 patent, Claims 1 and 2] | 6 |
| | F. "Move Receiving Window (MRW) Acknowledgement (ACK) Status PDU" ['777 patent, Claims 1 and 2] | 8 |
| | G. "accurately reestablishing the receiving side" ['777 patent, Claim 2] | 8 |
| | H. "control circuit" ['777 patent, Claim 2; '913 patent, Claim 3] | 9 |
| | I. "reset procedure" ['913 patent, Claims 1 and 3] | 12 |
| III. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Dey L.P.*,
  287 F.3d 1097 (Fed. Cir. 2002) ................................................................................................ 12

*Altiris, Inc. v. Symantec Corp.*,
  318 F.3d 1363 (Fed. Cir. 2003) .................................................................................................. 1

*Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*,
  CIVA 3:01CV0485, 2008 WL 542966 (M.D. Pa. Feb. 25, 2008),
  aff'd, 477 Fed. Appx. 740 (Fed. Cir. 2012) ................................................................................ 5

*Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*,
  246 F.3d 1368 (Fed. Cir. 2001) ................................................................................................ 12

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ................................................................................................ 1, 2

*Core Wireless Licensing S.A.R.L. v. L.G. Elecs. Inc.*,
  No. 2:14-cv-0911, 2015 WL 6956722 (E.D. Tex. Nov. 9, 2015) ............................................. 10

*Innovative Sonic Ltd. v. Research In Motion Ltd.*,
  2012 WL 4928897, Case No. 11-cv-0706 (N.D. Tex., Oct. 17, 2012) ....................................... 6

*Intellicheck Mobilisa, Inc. v. Honeywell Intl. Inc.*,
  C16-0341JLR, 2017 WL 6550700 (W.D. Wash. Dec. 21, 2017) ............................................. 10

*Interactive Gift Express Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .................................................................................................. 1

*Marrin v. Griffin,*
  599 F.3d 1290 (Fed. Cir. 2010) .................................................................................................. 9

*N. Telecom, Inc. v. Datapoint Corp.,*
  908 F.2d 931 (Fed. Cir. 1990) .................................................................................................... 5

*NFC Tech., LLC v. Samsung Elecs. Co., Ltd.*,
  2:15-CV-283-JRG-RSP, 2016 WL 1704770 (E.D. Tex. Apr. 28, 2016) .................................. 10

*Nichia Corp. v. Vizio, Inc.,* No. 16-0545 SJO-MRW,
  2019 WL 1966664 (C.D. Cal. Mar. 13, 2019),
  vacated at request of parties,
  No. 8:16-cv-00545-SJO-MRW, 2019 WL 7281927 (C.D. Cal. Apr. 16, 2019) ...................... 11

*NNPT LLC v. Huawei Inv. & Holding Co.*,
  2:14-CV-677-JRG-RSP, 2015 WL 4911846 (E.D. Tex. Aug. 17, 2015) ................................. 12

*Pitney Bowes, Inc. v. Hewlett–Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ....................................................................................... 12

*Randall May Intern., Inc. v. DEG Music Prods., Inc.*,
    378 Fed.Appx. 989 (Fed. Cir. 2010) ................................................................................. 4

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .......................................................................................... 4

## EXHIBIT LIST

| Exhibit | Description |
|---|---|
|  | Declaration of Dr. Edwin Hernandez-Mondragon in Support of Plaintiff L2MT's Surreply Claim Construction Brief ("Hernandez Surreply Decl.") |
| 1 | Excerpt of U.S. Patent No. RE47,200 File History (Jan. 30, 2017 Office Action) |
| 2 | Excerpts of 3rd Generation Partnership Project, Technical Specification 125.322 v6.4.0 (2005-06), Sections 9.1–9.2.2.12 and 11.4.3 (Reset) |

**I.      INTRODUCTION**

L2 Mobile Technologies LLC ("L2MT") submits this Surreply Brief pursuant to the parties' Joint Notice of Agreed Changes to Scheduled Deadlines and in response to Defendant Google LLC's ("Google") Reply Claim Construction Brief (Dkt. 46, hereinafter "Reply").

**II      CLAIM TERMS**

    **A.      Order of Method Steps ['200 Patent Claim 10]**

Google continues to confuse matters on this issue. Google states that the dispute comes down to whether step 10(b) must come before step 10(c) and whether step 10(d) must come before step 10(e). First, Google did not specifically provide arguments that step 10(b) must come before step 10(c) (or 10(d)) in its initial brief other than a blanket statement that the claim elements must "be performed in the order they are written." (Dkt. 35, Google's Opening Claim Construction Brief "Br." at 6.) Accordingly, Google has waived this argument. Google then argues that 10(b) must come before 10(d), not 10(c). In short, Google is grasping at straws where logic and law dictate strict restrictions on the limitations that can be imported into the claims.

Substantively, Google points to nothing in the claim language itself that requires 10(b) to come before 10(c) or 10(d) or requiring 10(d) to come before 10(e). Where the claim itself does not require a specific sequence, the Court must "next look to the rest of the specification to determine whether it 'directly or implicitly **requires** such a narrow construction.'" *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1370 (Fed. Cir. 2003) (quoting *Interactive Gift Express Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1343 (Fed. Cir. 2001)) (emphasis added). The issue thus becomes whether limitations from the specification or prosecution history may be read into the claims, which may not occur absent a specific definition or disclaimer. *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796–97 (Fed. Cir. 2019). Nothing Google refers to rises to the level of a disclaimer requiring the import of a limitation into the claims that is not explicitly recited.

1

First, regarding the ordering of steps 10(d) and 10(e), Google cites a passage of the '200 patent (Br., 8 (citing 6:21–22)), but this cited paragraph describes a brief summary of "the preferred embodiment." (*See* 6:13.) Elements of a preferred embodiment are not read into the claims absent an express statement of its requirement, and Google points to no such explicit definition or disclaimer. *Continental Circuits*, 915 F.3d at 797. The purpose of the specification is to teach the invention and to provide a best mode; thus, statements regarding the preferred embodiment of the '200 patent's invention should not be read into the claim. *See id*. Next, Google cites to a statement in the '200 patent's prosecution history, but this statement was made in response to an objection that the claims were allegedly not supported by specification. (*See* Ex. 1 (January 30, 2017 Office Action) at 3–4; *see also* Dkt. 36-1 at 6.) In other words, the applicant's statement is a description of how the specification supports the claims (akin to the specification's purpose of teaching the invention), not a definition of the claims themselves. Thus, in this context, the prosecution history statement cannot be considered an express disclaimer of claim scope.

Google alleges that L2MT has no evidence for its construction, but the law requires an express disclaimer to read a limitation into the claims (and thus imposes no burden on L2MT to prove its position). Also, L2MT provided the declaration of Dr. Hernandez in support of this issue. (Dkt. 41-1, ¶ 60.) Additionally, as a matter of logic, if the security counts that make up the first set have not changed since before initiating a new channel, there is no reason the first set could not be utilized to obtain a first value prior to initiating a new channel. (Hernandez Surreply Decl., ¶ 7.) Moreover, step 10(f) includes two parts: 1) setting the MSBx of the initial security count value for the new channel equal to the first value, and 2) wherein if the first set is empty, then the first value is set to a first predetermined value. In the context of claim 10, an empty set can occur when no channels have used the second security key thereby having no count, which leads to the empty set.

(*Id.*, ¶ 8.) This situation is likely to exist prior to assigning the second security key to the new channel. (*Id.*) Thus, step 10(f) further establishes that Google's proposed strict ordering of steps 10(d) and 10(e) should not apply.

Regarding steps 10(b) and 10(c)/10(d), although L2MT disagrees with Google's characterization of the record, L2MT agrees that step 10(d) occurs after 10(b), but disagrees that step 10(c) must occur after 10(b) for the reasons given in L2MT's Response. (*See* Dkt. 41, L2MT's Responsive Claim Construction Brief ("Resp.") at 4–5.) Google did not provide specific arguments regarding steps 10(b) and 10(c).

In summary, L2MT agrees that step 10(b) comes before 10(d), but Google cannot show disclaimer by the applicant that step 10(d) comes before 10(e), and Google provides no argument that 10(b) comes before 10(c). Thus, the Court should adopt L2MT's position on these two points.

> **B.** **"consisting of corresponding security count values of the established channels in the wireless communications device that utilize the second key" ['200 patent, Claims 10, 14]**

No dispute.

> **C.** **"the first value is at least as great as the x most significant bits (MSBx) of a value in the first set and at least one of the established channels utilizing the first security key" ['200 patent, Claim 10]**

Google alleges that there is only one way that this claim phrase can be understood grammatically, but this is not true. In the phrase "wherein the first value is at least as great as the x most significant bits (MSBx) of a value in the first set **and** at least one of the established channels utilizing the first security key," the "and" could link "at least one of the established channels . . ." to either "at least as great as" (as Google alleges) OR to "wherein" (consistent with L2MT's position). Thus, Google's entire premise that the grammar dictates only one meaning falls apart.

Google misrepresents the *Randall May v. DEG Music* case. The claim language at issue in *Randall May* was "a shoulder supported carrier structure . . . having changeable or adjustable

3

shoulder supporting members for securing said structure on the shoulders of a user." *Randall May Intern., Inc. v. DEG Music Prods., Inc.*, 378 Fed.Appx. 989, 997 (Fed. Cir. 2010). There, the court addressed whether the "changeable or adjustable" language applied to either the "shoulder supporting members" language or to the claimed drum carrier structure as a whole. *Id*. Although the court noted that the "changeable or adjustable" language immediately preceded the "shoulder supporting members," the court also repeatedly referred to the specification as supporting the court's construction. *Id*. at 997–98 (for example, quoting the specification and stating "[a]nd in every other embodiment described in the specification, the shoulder straps are described and depicted as being changeable or adjustable (or both)."). Thus, even Google's primary authority urges this Court to review the '200 patent's specification, which wholly supports L2MT. (*See* Resp., 8–10.) Moreover, *Randall May* does not address claim language like that at issue here. *Randall May* addressed the application of adjective modifiers immediately preceding an associated noun, whereas the dispute here is over how the word "and" is applied.

Google alleges that L2MT asserts a different meaning here than in prosecution, but unlike in *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995), Google points to no disclaimer that contradicts L2MT's position. Google also misrepresents L2MT's construction as an improper "redraft[ing]" of the claim. (*See* Reply, 5.) When the claim is understood as having the word "and" link the "at least one of the established channels . . ." phrase to "wherein," then L2MT's construction is the claim's natural meaning, just substituting "in addition" for "and." In other words, the "wherein" introduced two concepts: "The first value is at least as great as the x most significant bits (MSBx) of a value in the first set. In addition, at least one of the established channels utilizes the first security key." No redraft is necessary.

Google then resorts to a strawman argument by alleging that L2MT asserts that the claim

does not operate as the patentee intended. (*Id*.) L2MT never made such a claim. (*See* Resp. at 10.) As clear above, the dispute is about how one of ordinary skill would understand the claim in the context of the intrinsic evidence. As such, there is no claim redraft, just a proper understanding of the language as written.

        D.      **"a first predetermined value" ['200 patent, Claims 10, 11]**

Here, Google tries to create controversy where there is none. "Predetermined" has a plain and ordinary meaning that needs no further definition. The relevant portion of claim 10 states: "if the first set is empty, then the first value is set to a predetermined value." Using the common definition of "predetermined," the claim would simply mean that if the first set is empty, the first value is set to a value determined in advance of setting the first value.

Google alleges that there is a temporal ambiguity to this phrase, but no such ambiguity exists: the value is set in advance of execution of this step. Google points to no disclaimer or other definition in the intrinsic evidence that requires imposing an upper bound or specific time for predetermining this value. Instead, Google proposes "default value," which does not solve this alleged temporal ambiguity and belies Google's supposed need to construe this phrase. Instead, the Court should adopt the plain meaning of this claim language.

Google's attempt to distinguish *N. Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 938 (Fed. Cir. 1990) on context does not abrogate its core holding that the original claims of a patent application are part of the specification, a holding that has been applied in many other contexts. *See Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, CIVA 3:01CV0485, 2008 WL 542966, at \*5, 6 n.12 (M.D. Pa. Feb. 25, 2008), aff'd, 477 Fed. Appx. 740 (Fed. Cir. 2012) (unpublished) (addressing *N. Telecom* and examining originally filed claims in the claim construction context).

Google also tries to distinguish the prior claim construction holding in *Innovative Sonic Ltd. v. Research In Motion Ltd.*, 2012 WL 4928897, Case No. 11-cv-0706, \*11 (N.D. Tex., Oct.

17, 2012) on exactly this point, but Google ignores that the claims at issue in *Innovative Sonic* were identical in relevant part to claim 10 at issue here. Both claim sets recite "wherein if the first set is empty, then the first value is set to a predetermined value." Lastly, the dispute over the order of the claim steps does not impact the understanding of "predetermined value," otherwise Google would have raised this issue in its arguments that claim 10 requires a particular order. Moreover, the temporal aspect of "predetermined value" is clear, the value is determined in advance of setting the first value where the first set is empty. Nothing more is required by the claims or the intrinsic evidence.

> **E. "only reestablishing the receiving side in the RLC entity of the communications device" ['777 patent, Claims 1 and 2] / "reestablishing the receiving side" ['777 patent, Claims 1 and 2]**

L2MT disagrees with Google's bullet point summary of L2MT's Response. (*See* Reply, 8.) The primary dispute appears to be over what it means to have the reestablishment and reset procedures be different. L2MT's Response described in detail the complex and overlapping issues at play between reestablishment and reset procedures. (Resp., 13–17; *see also* Dkt. 41-1, ¶¶ 74–85.) Google ignores these technical realities and wields a sledgehammer approach that improperly ignores the context and understanding of one of skill in the art, thus risking misapplication by the jury.

L2MT does not dispute that reestablishment and reset are different procedures, but this does not imply a complete separation because there is significant overlap between the two procedures. (*Compare* Ex. 2 (3GPP TS 125.322 v 6.4.0 (2005-06), Excerpt of Section 11.4.3 (Reset)) *with* Dkt. 41-9 (Excerpt of Section 9.7.7 (Reestablishment)); *see also* Resp., 16–17; Dkt. 41-1 ¶¶ 74-85.) For example, both procedures include resetting state variables to initial values and setting configurable parameters to their configured values. (*Compare* Ex. 2, Section 11.4.3 (Reset) *with* Dkt. 41-9, Section 9.7.7 (Reestablishment).) Such overlap makes it possible that certain

software code modules could be called and used by both procedures. (Hernandez Surreply Decl., ¶¶ 9–10.) Nevertheless, the primary difference between the two is in how they are initiated, reset by reception of a RESET PDU from another device and reestablishment by request from a layer within the same device although other differences exist. (*Compare* Ex. 2, Section 11.4.3 (Reset) *with* Dkt. 41-9, Section 9.7.7 (Reestablishment).) Thus, simply saying that the two procedures are completely different runs roughshod over the complicated technical reality. In this situation, the best solution is to define what reestablishment is, which is best addressed by L2MT, and leave out the unnecessary negative limitation.

Google complains that L2MT's proposal that the word "only" in the claim means to reestablish the receiving side without reestablishing the transmitter side fails to fully describe what happens. This intentionally ignores that one skilled in the art knows exactly what it means to have receiver side only reestablishment as this was present in the prior standard. (Dkt. 41-9, Section 9.7.7 (expressly setting forth steps for each of "if only the receiving side of the RLC entity is re-established" and "if the transmitting side of the RLC entity is re-established" and "if only the transmitter side of the RLC entity is re-established" and "if both the transmitter and receiver side of the RLC entity is re-established").) At a high level, these are understood procedures that occur regularly in the context of wireless communications such that the ambiguities dreamt up by Google simply do not exist for those of skill in the art—the standard by which the claims must be read. (Hernandez Surreply Decl., ¶ 10.) In other words, in the context of receiver side only reestablishment, certain steps are performed, but at other times the device may perform reestablishment of both the transmitter side and receiver side or only the transmitter side. (Dkt. 41-9, Section 9.7.7.) The claims do not preclude these other procedures from happening; the claims are instead focused on what happens during the specifically claimed context of receiver side only

7

reestablishment. Thus, L2MT's proposed construction, which is the better description of what reestablishment encompasses, should be adopted.

F. **"Move Receiving Window (MRW) Acknowledgement (ACK) Status PDU" ['777 patent, Claims 1 and 2]**

Google alleges that L2MT reads out that MRW ACK is a PDU. This is categorically wrong. L2MT's proposed construction is "a **Status PDU** including indication of MRW ACK" (emphasis added). It is a PDU. The technical question becomes how does a Status PDU become an MRW ACK PDU in the context of the '777 patent, and the '777 patent describes this exactly as proposed in L2MT's construction and described in L2MT's opening brief.

Google's error lies in characterizing "MRW ACK" as a PDU in its own right. One of ordinary skill will understand that "MRW ACK" stands for Move Receiving Window Acknowledgement (Ex. 2, Section 9.2.2.11), which is used to acknowledge receipt of a MRW (Move Receiving Window) SUFI (*id.*, Section 9.2.2.11.7). These SUFIs are transmitted in Status PDUs. Google's expert agrees with this basic premise. (Dkt. 46-1, ¶¶ 53–58.) The '777 patent then refers to such Status PDUs as MRW ACK PDUs or MRW PDUs based on the SUFIs these Status PDUs contain. (4:3–23.) With this context, the '777 patent demonstrates that the applicant acted as its own lexicographer in this instance to use the terminology MRW ACK PDU to refer to a Status PDU including indication of MRW ACK as proposed by L2MT. Accordingly, only L2MT's proposal gives the proper consideration of this technical context, consistent with the '777 patent's specification, and that provides clarity for the jury.

G. **"accurately reestablishing the receiving side" ['777 patent, Claim 2]**

Google completely misconstrues L2MT's argument that this phrase is a non-limiting aspect of claim 2's preamble by confusingly stringing together a series of non-sequiturs that indicate the weakness of Google's position. For example, Google states that L2MT failed to say what the

intended use of the device is (Reply, 11), but that is inherent in the preamble itself: "<u>utilized for accurately reestablishing the receiving side</u>." Google then challenges L2MT's argument that leaving out the preamble would not impact the structural definition of the claim, but Google's attack only addresses the intended use aspect—telling us nothing about the structural definition in the claim. (*See id.*) More confusingly, Google complains that L2MT does not point to an alleged invention but does not say why this matters to the issue of whether the preamble phrase at issue is limiting. (*Id.*) Google then alleges that L2MT states that the body of the claim recites known elements, willfully ignoring the context for this statement by L2MT, *i.e.*, that the claim's body does not need the preamble. (*Id.*, 11–12.) Most tellingly, Google string cites cases regarding this issue generally, but fails to contest *Marrin v. Griffin*, which most directly addresses the fact pattern of this dispute. *See* 599 F.3d 1290, 1295 (Fed. Cir. 2010) ("the mere fact that a structural term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim."). This claim phrase is non-limiting and thus cannot render the claim indefinite.

Should the court still find that this claim phrase is limiting, Google appears to completely ignore Dr. Hernandez's testimony that one of ordinary skill would understand what "accurately" means in the context of reestablishing the receiving side in claim 2. (Dkt. 41-1, ¶¶ 90–92.) Notably, Google's expert provided no opinion to the contrary. Google instead cites several passages from the '777 patent, but one of ordinary skill would understand these passages in the context of the art, that "accurately" means that errors that might occur without the invention could not occur. (*See*, *e.g.*, *id.*, ¶ 91.) As such, L2MT's proposal that "accurately" means "correctly" is fully consistent with how one of ordinary skill would understand the '777 patent.

### H.    "control circuit" ['777 patent, Claim 2; '913 patent, Claim 3]

Both the Federal Circuit and district courts alike have overwhelmingly concluded that

9

terms such as "circuit" or "circuitry" connote sufficient structure to avoid means plus function treatment. (Resp., 22–23.) Tellingly, Google fails to address any of these decisions; instead, it argues in a single footnote that "the majority"—not all—of the cases L2MT relies on pre-date *Williamson* and "should be rejected." (Reply, 13 n.2.) Google apparently feigns ignorance of the wealth of post-*Williamson* cases similarly finding that "circuit" related terms are not subject to § 112, ¶ 6. *See Intellicheck Mobilisa, Inc. v. Honeywell Intl. Inc.*, C16-0341JLR, 2017 WL 6550700, at *2–4 (W.D. Wash. Dec. 21, 2017) (distinguishing *Williamson* and finding that claimed "first circuitry" did not invoke § 112, ¶ 6); *see also NFC Tech., LLC v. Samsung Elecs. Co., Ltd.*, 2:15-CV-283-JRG-RSP, 2016 WL 1704770, at *9 (E.D. Tex. Apr. 28, 2016) (addressing *Williamson* and pre-*Williamson* caselaw and finding that claimed "excitation circuit" did not invoke § 112, ¶ 6); *see also Core Wireless Licensing S.A.R.L. v. L.G. Elecs. Inc.*, No. 2:14-cv-0911, 2015 WL 6956722, *17 (E.D. Tex. Nov. 9, 2015) (addressing *Williamson* and finding that the term "circuitry" did not invoke § 112, ¶ 6).

   Rather than substantively address any of the pre- or post-*Williamson* decisions, Google opts to mischaracterize the "crux" of L2MT's argument as relying on other structural components such as a processor or processing unit, program code, and memory. (Reply, 12.) This is incorrect. As L2MT argued in its Response, the term "control circuit" connotes sufficient structure on its own to avoid treatment under § 112, ¶ 6—these additional structural details recited by the claims just provide further context and support that on their own have been held to make a claim term not subject to construction as mean plus function. (Resp., 23.) Google's disingenuous assertion that "L2MT does not rebut" its § 112, ¶ 6 arguments is belied by the extensive discussion directly addressing Google's arguments in L2MT's Response. (*Id.*, 22–25.) Notably, Google fails to cite a single decision holding that a "circuit" or "circuitry" claim term is subject to treatment under §

112, ¶ 6, and instead depends solely on prior decisions addressing recognized nonce words such as "module," "mechanism," "unit," and "logic." (Br., 26–28; Reply, 12–13.) This is unsurprising, given the ample authority to the contrary cited above and in L2MT's Response.

Despite Google's assertion that the court in *Nichia* "found the claim term 'tone control circuit' to be subject to § 112 ¶ 6" (Reply, 13), a cursory review reveals that Google misstated this decision on several fronts. First, and most importantly, the claim term assessed by the court in *Nichia* was "control unit"—not a "tone control circuit" as Google misleadingly claims. *Nichia Corp. v. Vizio, Inc.,* No. 16-0545 SJO-MRW, 2019 WL 1966664, at *5 (C.D. Cal. Mar. 13, 2019), *vacated at request of parties*, No. 8:16-cv-00545-SJO-MRW, 2019 WL 7281927 (C.D. Cal. Apr. 16, 2019). Second, the court in *Nichia* was not even tasked with determining whether the claimed "control unit" was subject to § 112 ¶ 6; rather, "the parties [were] in agreement that the term is written in a means-plus-function form." *Id.* The court then endeavored to determine whether specification's disclosed "tone control means," "tone control circuit," and "gradation control unit" constituted sufficient corresponding structure for the function of "converting an input to pulse signals" under the second prong of the § 112 ¶ 6 analysis. *Id.* at *5–6. Critically, the court in *Nichia* distinguished this portion of the analysis from the *Apex Inc. v. Raritan* line of "circuit" cases because those decisions—like the cases cited above and in L2MT's Response—"address the initial stage of MPF analysis" where a rebuttable presumption applies. *Id.* at *6. So too here is the claimed "control circuit" entitled to such a rebuttable presumption. The *Nichia* case is inapposite, and Google's misstatements of this decision alone undermine the credibility of its arguments.

Accordingly, this Court should follow the replete Federal Circuit and district court precedent and find that the claimed "control circuit" is not subject to treatment under § 112 ¶ 6. Even if it were, the specification provides sufficient corresponding structure as already explained

in L2MT's Response.

### I. "reset procedure" ['913 patent, Claims 1 and 3]

Google leads its reply argument with reliance on statements made relative to the '777 patent as allegedly limiting on the '913 patent, without addressing L2MT's argument that this is legal error. (Resp., 27 (citing *Abbott Labs. v. Dey L.P.*, 287 F.3d 1097, 1104–05 (Fed. Cir. 2002)).)

Google then again resorts to strawman argument, arguing against its own allegation that L2MT insists that the reset and reestablishment procedures "must be coupled." (Reply, 14.) L2MT never made that statement. (*See, e.g.*, Resp., 25–28.) The '913 patent itself says that the reset state variable is reset during the single sided reestablishment procedure. (3:55–4:13.) This does not mean that the two procedures are "coupled" in a way that violates the understanding of one skilled in the art.

All this, of course, need not be addressed because "reset procedure" is only referenced in the respective preambles of claims 1 and 3. Google's Reply does not site a single case in support of this phrase limiting the claim. This ends the debate as no construction is necessary for a preamble phrase that does not limit the claim. *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1373–74 (Fed. Cir. 2001) (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)) ("[i]f the body of the claim sets out the complete invention, and the preamble is not necessary to give 'life, meaning and vitality' to the claim, 'then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation.'"); *see also NNPT LLC v. Huawei Inv. & Holding Co.*, 2:14-CV-677-JRG-RSP, 2015 WL 4911846, *7 (E.D. Tex. Aug. 17, 2015) (declining to construe preamble term where preamble was not limiting).

### III. CONCLUSION

L2MT respectfully requests that the Court adopt its proposed constructions.

12

Dated: December 21, 2021

By: */s/ Joseph F. Marinelli*
Timothy P. Maloney (IL 6216483)
Karl R. Fink (IL 6180508)
Joseph F. Marinelli (IL 6270210)
Evan J. Kline-Wedeen (IL 6329941)
**FITCH, EVEN, TABIN & FLANNERY LLP**
120 S. LaSalle St., Suite 2100
Chicago, IL 60603
Telephone: 312.577.7000
tim@fitcheven.com
krink@fitcheven.com
jmarinelli@fitcheven.com
eklinewedeen@fitcheven.com

*Attorneys for Plaintiff*
*L2 Mobile Technologies LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed on December 21, 2021 using the Court's CM/ECF system, which will send notice of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Joseph F. Marinelli*
Joseph F. Marinelli
