**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

<table>
<tr><td>

**L2 MOBILE TECHNOLOGIES LLC,**
   **Plaintiff,**

   *v.*

**GOOGLE LLC,**
    **Defendant.**

</td><td>

**6:21-cv-00358-ADA**

</td></tr>
</table>

**MEMORANDUM OPINION & ORDER GRANTING DEFENDANT GOOGLE LLC'S
MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA
UNDER 28 U.S.C. § 1404(a) [ECF No. 18]**

   Came on for consideration this date is Defendant Google LLC's Motion to Transfer Venue

to the Northern District of California under 28 U.S.C. § 1404(a). ECF No. 18 (the "Motion").

Plaintiff L2 Mobile Technologies LLC ("L2MT") filed an opposition on July 20, 2021, ECF No.

23, to which Google replied on July 27, 2021, ECF No. 24. After careful consideration of the

Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** Google's Motion.

**I. BACKGROUND**

   On April 9, 2021, L2MT filed this lawsuit against Google, alleging that Google's Pixel line

of "smartphones that comply with the 3G and/or with both the 3G and 4G wireless communications

standards" (the "Accused Product(s)") infringe U.S. Patent Nos. 8,054,777 and 8,179,913 and U.S.

Reissue Patent No. RE47,200 (collectively, the "Asserted Patents"). ECF No. 1 ¶ 28. According

to L2MT, "each of the [Asserted Patents] have been declared essential to the 3G wireless

communications standard." ECF No. 23 at 1. L2MT further alleges that "[i]t is necessary to

practice one or more claims of the [patents-in-suit] to comply with the requirements of the 3G

mobile communications standard, including without limitation 3GPP TS 25.322 v6.12.0 and

subsequent versions." ECF No. 1 ¶¶ 31, 46, 65. In its answer, Google brings counterclaims related

to L2MT's offers to license the Asserted Patents under fair, reasonable, and non-discriminatory ("FRAND") license terms. ECF No. 16 at 34–41. It is undisputed that the Parties were involved in licensing negotiations before L2MT initiated this Action. *See* ECF No. 18 at 2; ECF No. 23 at 2.

L2MT and its sole member, Longhorn IP LLC, are headquartered at 8105 Rasor Blvd., Suite 210, Plano, TX 75024. *See* ECF No. 23 at 2. L2MT has a mailing address at 5204 Bluewater Dr., Frisco, TX 75034. *See id.* Google is headquartered in Mountain View, California. *See id.* L2MT alleges, and Google does not dispute, that Google also has significant operations in Texas, including more than 1,700 full-time Texas employees. *See id.* According to Google, Qualcomm supplies Google with the processors which purportedly implement the accused 3G standard on the Pixel Products. *See* ECF No. 18 at 4. Qualcomm is a Delaware corporation, headquartered in San Diego, California. *See id.*

Google has moved to transfer this case to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a), alleging that it is more convenient than this District. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a

movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A.    Venue and Jurisdiction in the Transferor Forum

This Court finds, and L2MT does not contest, that this Action could have been brought in the NDCA. *See* ECF No. 18 at 5–6.

#### B.    Private Interest Factors

##### 1.    Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct.

4

21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021), *vacated on other grounds*, *In re Pandora Media, LLC*, No. 2021-172, 2021 U.S. App. LEXIS 30963 (Fed. Cir. Oct. 13, 2021).

*Party Evidence*. Google alleges that it maintains "technical, financial, marketing, licensing, and pre-suit discussion documents relevant to the accused Pixel Products at its Mountain View headquarters, where the employees who create and maintain them are primarily located." ECF No. 18 at 9. L2MT criticizes Google's arguments on several grounds, asserting that Google has not (a) identified relevant documents with any specificity; (b) indicated whether its documents are physical or electronic; (c) explained why its documents would be more difficult to access if trial was in this District; or (d) identified the servers where Google's electronic documents are stored. ECF No. 23 at 6.

As to (a), L2MT presents nothing that would cause this Court to question the testimony in Google's affidavit stating that "documents in Google's possession about its products and services are normally created and maintained by the employees working on those products and services," and that "Google employees who have knowledge about the technical, financial, and marketing aspects of the accused Pixel Products are based in the San Francisco Bay Area." ECF No. 18-3 ¶¶ 5, 16. This is consistent with the common understanding that, in patent infringement cases, the "bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Court is familiar with the type of evidence presented

in a patent infringement case and will, as general rule, not demand that accused infringers attach an inventory of relevant evidence with corresponding locations.

As to (b)–(d), the Court agrees that Google has not established whether the relevant evidence is physical or electronic and so the Court—having nothing else to go on—will presume, based on the trend in modern, high-technology patent infringement cases, that the bulk of the relevant evidence is electronic. The Court is satisfied, based on Google's affidavit, that custodians for relevant, electronic documents reside in the NDCA. But the Court is not satisfied that those electronic documents are necessarily stored with the NDCA-based custodian merely because these custodians "maintain" the relevant electronic documents. The Parties have not shown where the relevant electronic documents are stored. *See* ECF No. 23 (noting how Google's Motion "lacks an identification of where those documents are physically stored, such as the location of a server or data center").

But, as the Federal Circuit has recently advised, the inquiry must not end there; this Court must also consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021). Which is to say, an accused infringer need not show that the relevant documents are, as a practical matter, easier to access in the transferee forum than the transferor forum, so long as it alleges that documents are created and maintained in the transferee forum. This is so even though the accused infringer—who will, according to binding authority, possess most of the relevant documents—bears the burden of establishing that transfer is clearly more convenient and is typically best suited to elucidate the relative ease of access of proof. In this Court's view, this improperly shifts the burden to the non-movant, requiring it to extract a confession from the movant that electronic documents are just as

easily accessed from the transferor forum. Nonetheless, this Court will follow the Federal Circuit's lead and weigh the evidence created and maintained by NDCA-based Google personnel in favor of transfer.

As to physical evidence, L2MT asserts that it maintains relevant physical documents at its Plano and Frisco locations in the Eastern District of Texas. ECF No. 23 at 6–7. This includes L2's license agreements on the Asserted Patents and related correspondence and bank statements related to its SEP portfolio. *Id.* at 7. The Court finds these documents relevant to at least damages, willfulness, and Google's counterclaims, and it will accord these documents, located in the nearby Eastern District of Texas ("EDTX"), weight under this factor. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous. All of the documents and physical evidence relating to the accident are located in the Dallas Division . . . ."). By the same token, the Court will not presume that Google maintains *zero* comparable, physical evidence at Google's Mountain View campus—where the relevant custodians work and the Accused Product was purportedly designed. *See* ECF No. 18-3.

*Third-party Evidence.* Google avers that Qualcomm maintains "key third-party documentary evidence" in San Diego. *Id.* To that point, Google relies on a declaration pulled from an EDTX case, in which a Qualcomm employee testified that Qualcomm customarily has its source code only available for review at a secure environment in Los Angeles. ECF No. 24 at 2 (citing ECF No. 23-4 ¶ 7 (the "Qualcomm Declaration")); *Sun Patent Trust v. HTC Corp.*, 2:20-cv-286-JRG, ECF No. 35-13 (E.D. Tex. Feb. 23, 2021). The Qualcomm Declaration states that "[m]ost of Qualcomm's employees based in the United States are located in California, including the vast

majority of [Qualcomm] employees based in the United States who are involved in the design and development of [Qualcomm's] cellular baseband processor chipsets." ECF No. 23-4 ¶ 8.

The Court is skeptical of the probative value of a months-old declaration prepared for an unrelated litigation in a different court, but it has no reason to question the veracity of the testimony therein that California-based Qualcomm employees are "involved in the design and development of" chipsets at issue here. Based on this representation, the Court is willing to presume that relevant document custodians reside at Qualcomm's headquarters in San Diego. (It is also willing to presume that relevant custodians reside abroad, but evidence abroad has little to no effect on the balance of convenience in this case.) Given the Federal Circuit's mandate that this Court credit the location of document custodians, discussed above, any evidence these California-based custodians maintain is likely more accessible in California than this District.

As to Qualcomm limiting source code review to California, this Court has previously found that requiring in-person source code review in California to be "most persuasive." *Bluebonnet Internet*, 2021 U.S. Dist. LEXIS 137400, at *8. The Court, therefore, finds that the location of source code in Los Angeles favors transfer. But only slightly so, given that only counsel and retained technical experts will likely be permitted to review it. The convenience of counsel and experts is more appropriately considered under the willing-witnesses factor and, even then, is not owed weight as these personnel are hired for purposes of litigation. *See, e.g.*, *Monolithic Power Sys. v. Meraki Integrated Circuit Shenzhen Tech.*, No. 6:20-cv-00876-ADA, 2021 U.S. Dist. LEXIS 222473, at *12 (W.D. Tex. Nov. 5, 2021); *Waldeh v. Tackett*, No. 6:19-cv-503-ADA-JCM, 2020 U.S. Dist. LEXIS 200253, at *7 (W.D. Tex. Oct. 27, 2020); *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-00504-JRG-RSP, 2020 U.S. Dist. LEXIS 100416, at *9 (E.D. Tex. June 8, 2020).

Even if their convenience is owed weight, the Parties have not identified where their source code experts reside such that the Court may balance their convenience.

L2MT also asserts that custodians of Google documents relating to pre-suit negotiations with L2MT are based in Colorado and Illinois. *Id.* For its part, Google identified several sources of proof far beyond this District and the NDCA. *See* ECF No. 18-1 ¶ 11. Because none of these sources of proof are near this District or the NDCA, the Court accords them little weight. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). It further finds that what little weight is owed those sources nearer the NDCA is neutralized by that weight owed to sources nearer to Waco.

According to Google, attorneys who were "[r]egistered" prosecuting attorneys on some of the Asserted Patents are in California. ECF No. 18-1 ¶ 11. But the Court will not find that these attorneys possess any relevant documents without some representation that, for example, they drafted the relevant patent or their name appears on an office action response in the relevant patent's prosecution history. The Court will not infer that every attorney "registered" to prosecute a patent application was actually involved in prosecution. Even if it was, the Court is aware that registered prosecuting agents and attorneys may nevertheless only be superficially involved in prosecution of the relevant application. *Cf. In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1379 (Fed. Cir. 2010) (noting how some attorneys "may have patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements"). And even if these attorneys possess relevant documents, the Court would only accord this evidence more-than-nominal weight where if given some reason to believe those documents are not subject to privilege.

In sum, L2MT has specifically identified relevant physical documents stored in Texas and Google has referred generally to evidence it maintains in California. While it is true that the "bulk of the relevant evidence usually comes from the accused infringer," *In re Genentech*, 566 F.3d at 1345, this is not merely a patent infringement case. Because Google has accused L2MT of breaching its FRAND obligations, L2MT will supply significant tranches of evidence. The Court is also persuaded that Qualcomm maintains relevant evidence in Los Angeles and at its San Diego headquarters. Yet the distance separating these locations from San Francisco and the NDCA diminishes the weight accorded to this evidence. The weight owed to L2's Plano- and Frisco-based evidence is also attenuated, but to a much lesser degree owing to the smaller gap between Waco, Plano, and Frisco. As such, the Court finds that this factor slightly favors transfer.

2.    Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

As an initial matter, Google identified potentially relevant third-party witnesses in Taiwan, Mauritius, Illinois, and Virginia. ECF No. 18-1 ¶¶ 11, 12. The Court considers these witnesses under this factor because neither side suggested they would be willing to travel for trial. *See In re HP*, 2018 WL 4692486, at *3 n.1. These potential witnesses are owed no weight because neither this Court nor the NDCA can compel their testimony. Google also named Curt Dodd, a third-party witness from a California-based patent monetization firm, as being involved in the Parties' pre-suit negotiations. ECF No. 18-1 ¶ 12. His presence in California favors transfer under this factor because has not been shown to be a willing witness, he likely has knowledge relevant to willfulness, damages, and FRAND counterclaims, and he is within the NDCA's subpoena power.

Google also identifies unnamed, San Diego-based Qualcomm personnel as being within the subpoena power of the NDCA. ECF No. 18 at 10. L2MT argues that Qualcomm personnel should not be evaluated under this factor because the Qualcomm Declaration "confirms that

Qualcomm was at least willing to send a witness to Seattle, Washington to testify regarding the source code of its LTE-Advanced cellular baseband chipsets." ECF No. 23 (citing ECF No. 23-4 ¶ 11). The Qualcomm Declaration states in relevant part: "If needed at trial, [Qualcomm] is willing to send a witness knowledgeable of the relevant source code to Seattle, Washington." ECF No. 23-4 ¶ 11. The Court disagrees with L2's logic. Qualcomm personnel are not necessarily willing to travel for any trial held in any town within 1,000 miles of San Diego merely because Qualcomm personnel were willing to travel from San Diego to Seattle for one particular trial.

L2MT otherwise takes issue with the Qualcomm Declaration, arguing that it "[f]alls short of establishing that Qualcomm primarily designs and manufactures in San Diego the cellular baseband processor chipsets it provides to Google and further fails to establish that potential Qualcomm witnesses having relevant knowledge are located there." ECF No. 23 at 11. L2MT notes how the Qualcomm Declaration states that "the vast majority of [Qualcomm's] employees based in the United States who are involved in the design and development of [Qualcomm's] cellular baseband processor chipsets" are located in San Diego. ECF No. 23 at 11 (citing ECF No. 23-4 ¶¶ 2, 8). L2MT states that this fails to "inform whether, and to what extent, any design or manufacture of its processor chipsets occurs in other offices or abroad." *Id.*

L2MT also argues that Google has failed to establish that Qualcomm personnel are likely witnesses in this Action. ECF No. 23 at 10. According to L2, because the Asserted Patents are SEPs and the accused Pixel phones are advertised as complying with the relevant standards, it is "entirely speculative" that Qualcomm personnel will be necessary to address infringement. *Id.* L2MT also posits that testimony from Qualcomm engineers would be unnecessary or cumulative of testimony offered by Google engineers. *Id.*

Potential Qualcomm witnesses tip this factor toward transfer. This Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *8. And, as discussed above, this Court is satisfied that Qualcomm likely possesses relevant evidence in California. Google, accordingly, need not particularly identify Qualcomm witnesses. The Court is persuaded that engineers at Qualcomm—the company that "sells the components that are actually accused of infringement here to Google," ECF No. 24 at 1—may have relevant testimony beyond that which Google engineers could offer (even if the Asserted Patents are SEPs and the Accused Products are advertised as complying with the relevant standard). Google's position that Qualcomm engineers would testify at trial may be speculative, but the Federal Circuit has warned this Court away from making assumption as to who is likely to testify at trial and instead focus on whether these witnesses have relevant knowledge. *See In re Atlassian Corp. PLC*, No. 2021-177, 2021 U.S. App. LEXIS 33790, at *6 (Fed. Cir. Nov. 15, 2021). And, again, the Court is persuaded that San Diego-based Qualcomm engineers, who had some hand in the design and development of the accused chipset, possess knowledge relevant to infringement.

Google also argues that this factor favors transfer because some prosecuting attorneys of the Asserted Patents are within the subpoena power of the NDCA. ECF No. 18 at 10. L2MT criticizes Google for failing to identify whether the prosecuting attorneys are unwilling to attend trial. ECF No. 23 at 8. The Court rejects the convenience of these prosecuting attorneys for the same reason it accords zero weight to sources of proof from prosecuting attorneys, above. That is, Google has not supplied evidence from which this Court can discern whether these attorneys have relevant knowledge.

In sum, Google has identified potential witnesses from Qualcomm and a patent monetization firm whom the NDCA could compel to testify, while L2MT has failed to identify any witnesses this Court could compel. This factor, therefore, favors transfer.

### 3.   Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d at 1340; *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

Google argues that its "employees with technical, financial, and marketing knowledge of the accused Pixel Products are almost all in the NDCA." ECF No. 18 at 7. Google attaches a declaration identifying two hardware engineers, a head of product marketing, a senior financial analyst, a patent counsel, and a senior litigation counsel, all working for Google ▮▮▮▮▮▮ ▮▮▮▮▮▮ and all with knowledge relevant to this case. ECF No. 18-3 ¶¶ 6–12. That declaration also identifies one in-house patent counsel in ▮▮▮▮▮▮, and a technical advisor in ▮▮▮▮▮▮, both of whom work for Google and allegedly have knowledge relevant to pre-suit negotiations with L2. *Id.* ¶¶ 13, 14.

L2MT identifies two L2MT personnel involved in the pre-suit negotiations with Google who have extensive knowledge of L2's licensing activities with Asserted Patents. ECF No. 23 at 9. Both are located in L2's Plano office. *Id.* L2MT also notes that a Fitch Even attorney in Chicago was involved in pre-suit licensing negotiations with Google and has information relevant to Google's FRAND counterclaims. ECF No. 23 at 12. The Court will presume he is a willing witness given that L2MT has retained his firm as trial counsel in this Action.

The Court is satisfied that each of these potential witnesses has relevant knowledge. It is further persuaded that the NDCA would be more convenient for the six Google employees in the San Francisco area. And, based on the 100-mile rule, this District would be more convenient for

the two L2MT employees in Plano, Google's ████-based in-house patent counsel, and those potential witnesses in ████: Google's technical advisor and the Fitch Even attorney. The Court finds that this factor only slightly favors transfer given that several witnesses reside in the transferee forum, only two reside near this forum, and others reside nearer this forum than the transferee forum, but not by a particularly wide margin.

### 4.   Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

16

This factor is neutral. Google filed this Motion the same day it filed its answer so this Action is not so mature that this factor would counsel against transfer. The Court refuses Google's request to weigh this factor in favor of transfer merely because Google has identified relevant witnesses in the NDCA. ECF No. 18 at 10. Acquiescence would effectively double count the convenience of relevant witnesses. The Federal Circuit has already instructed courts to weigh the location of custodians—who are typically also relevant witnesses—under the sources-of-proof factors. And, in patent infringement cases, the local interest factor is now largely limited to analyzing the location of personnel involved in the development of the Accused Product. The Court refuses to place any more feet on the scale; the *Volkswagen* inquiry is more robust than a witness-counting exercise. *Cf. Volkswagen II*, 545 F.3d at 316 (refusing to "read[] . . . out" even one of the § 1404 factors).

### C.    Public Interest Factors

#### 1.    Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and/ economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis

"looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

The Federal Circuit has recently concluded that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th at 1322. Bound by this guidance, the Court finds that this factor is neutral.

   2. <u>Local Interests</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in

the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Google argues that it designed the accused Pixel Products at its headquarters in the NDCA. ECF No. 18 at 11. L2MT responds that Google nevertheless has a substantial presence in Austin with plans to plant even deeper roots within this District. ECF No. 23 at 14. L2MT further argues that Google's FRAND counterclaims "call into question the work and reputation of L2MT and its representatives. ECF No. 23 at 15. Google avers, however, that L2MT is: (a) based in the EDTX; and (b) does not transact business in Texas because it is merely a patent licensing entity. ECF No. 18 at 12.

The Court finds that this factor is neutral. It is indisputable that Google has a significant presence in this District. But as the Federal Circuit has repeatedly admonished, courts must focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. Because Google has presented evidence that the accused Google Pixel product was designed in the NDCA, the Court is satisfied that events giving rise to L2's infringement claims occurred in or near the NDCA.

Yet Google has also counterclaimed, alleging L2MT is violating its FRAND commitments. ECF No. 16 at 30, 37–40. The Court agrees with L2—an entity residing in the EDTX, near this District—that these counterclaims "call[] into question the work and reputation of several individuals residing in or near [this District]." *In re Hoffmann-La Roche*, 587 F.3d at 1336. Google's argument that L2MT is not conducting business in Texas because L2MT is a licensing entity is specious. As L2MT notes, it has licensed patents from its portfolio without engaging in litigation and, indeed, "has not previously initiated any litigation involving the" Asserted Patents. ECF No. 23 at 15. L2MT is transacting business in Texas. That is so, even if Google does not

appreciate L2's business model. And because Google's counterclaims arise from L2's conduct, including Texas-based conduct, Texas has a localized interest in this dispute.

Because both California and Texas have specific, localized interests in this Action, the Court finds that this factor is neutral.

> 3.   <u>Familiarity of the Forum with Law-At-Issue</u>

The Parties do not dispute that this factor is neutral and the Court agrees.

> 4.   <u>Conflict of Laws</u>

The Parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs slightly in favor transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs slightly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Five factors are neutral, the sources-of-proof and willing-witnesses factors slightly favor transfer, and the compulsory-process factor favors transfer. This is not a case where "there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum." *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12. Google has identified six Google personnel in the NDCA and L2MT has identified two L2MT personnel in

nearby Plano. There are likely Qualcomm witnesses residing in San Diego (though Google has not identified them with any specificity), nearer to the NDCA than this District. This is an exceedingly close case but, based on the recent deluge of guidance issuing from the Federal Circuit, the Court is bound to conclude that Google satisfied its burden in showing that the NDCA is clearly more convenient than this District. Google's Motion is therefore **GRANTED**. The Court **ORDERS** that the above captioned case is transferred to NDCA.

SIGNED this 29th day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE